L KIMBALL, Justice.
Plaintiff, a member of the Teachers’ Retirement System of Louisiana (“TRSL”), filed suit shortly before she retired against her employer and TRSL seeking a declaration that “all earnable compensation” paid to her “be found to be part of her average monthly compensation for purposes of retirement and DROP benefits along with the average base salary.” Plaintiff also sought, subsequent to the requested declaration, the issuance of a writ of mandamus ordering that her average earnable compensation be certified to include both her base salary and her supplemental salary, that her employer fund her retirement account in the appropriate amount, and that her employer authorize the correction and payment of any benefits due and owing based on her total salary. Defendants responded with an exception of prescription. For the reasons that follow, we conclude that plaintiffs suit is one for the recovery of compensation for services rendered and, as such, is subject to the three-year prescriptive period provided in La. C.C. art. 3494. Thus, when plaintiff 1 ¡Tiled suit on August 7, 2000, any claims she had for recovery of compensation for services rendered prior to August 7, 1997, were prescribed. Her suit, however, was timely filed with respect to those claims for recovery of compensation for services rendered that accrued between August 7, 1997, and July 1, 1998. As to those claims that have not prescribed, we find that plaintiffs supplemental salary should have been included as part of her earnable compensation as defined in La. R.S. 11:701(10).
Facts and Procedural History
Dr. Judith Fishbein (“plaintiff’), a pediatrician specializing in neonatology, was employed by the Louisiana State University Health Sciences Center or its predecessor (“LSU”) from 1970 until she retired on April 15, 2001. At the beginning of her career at LSU, plaintiff was an instructor of pediatrics at Earl K. Long Medical Center in Baton Rouge. Plaintiff explained at trial that as a member of the pediatric department, she had “major teaching responsibilities for medical students, residents, and others.” She further described her duties as being “responsible for the care of patients that were at Earl K. Long Hospital, and also [having] some administrative responsibilities which changed over the years.” Plaintiff served as chief of pediatrics for approximately nine years. During her employment with LSU, plaintiff was an untenured faculty member and, as such, could have been terminated without cause upon one year’s notice by LSU.
*1263 Plaintiff earned a salary for the work she performed for LSU that was not contingent on the number of patients she treated. Initially, plaintiffs gross salary consisted solely of a “base salary.” Beginning in 1980, plaintiff began receiving a “supplemental salary” in addition to her base salary. The combination of her base salary and her supplemental salary comprised her total gross salary, with her supplemental salary equaling more than fifty percent of her gross salary in some I «years.
In 1979, plaintiff became a member of TRSL. It is undisputed that LSU did not report plaintiffs total gross salary to TRSL, but reported only her base salary. Similarly, both LSU and plaintiff made retirement contributions to TRSL based only upon plaintiffs base salary. At no time was plaintiffs supplemental salary subjected to employee withholdings for retirement purposes or to the employer’s share of retirement contributions on her behalf.[1]
Plaintiff received annual statements from TRSL that showed her retirement contributions were being made only on her base salary and not on her supplemental salary. Plaintiff testified that at least by 1989 she knew that only her base salary was being used as the basis for LSU retirement contributions made to TRSL on her behalf. When plaintiff questioned LSU personnel about this practice, she was told, “This is how we do it.” Plaintiff testified that she never raised the issue with TRSL because she was told it was an LSU issue.
On July 1, 1998, plaintiff entered the Deferred Retirement Option Plan (“DROP”), at which time her average compensation and creditable service were fixed. TRSL did not consider plaintiffs supplemental salary in fixing her benefits. On May 8, 2000, plaintiffs attorneys sent a letter to LSU and TRSL requesting that plaintiffs retirement benefit be adjusted to reflect her total compensation, including her supplemental salary.
On August 7, 2000, plaintiff filed a petition against LSU and TRSL for declaratory judgment and writ of mandamus, requesting a declaration that “all earnable compensation” paid to her “be found to be part of her average monthly | compensation for purposes of retirement and DROP benefits along with the average base salary.” Plaintiff then sought, subsequent to the requested declaration, the issuance of a writ of mandamus ordering that her average earnable compensation be certified to include both her base salary and her supplemental salary, that LSU fund her retirement account in the appropriate amount, and that LSU authorize the correction and payment of any benefits due and owing based on her total salary. Defendants answered the petition, generally denying the requested relief and pleading the dilatory exception of prematurity, the declinatory exception of lack of subject matter jurisdiction, and the peremptory exceptions of prescription, no cause of action, and no right of action. Defendants further pleaded the affirmative defense of estoppel. These exceptions were not disposed of prior to trial and were deferred to the merits of the case.
Prior to trial, the parties entered into several stipulations, including the following: (1) LSU has never reported to TRSL the total gross salary of Judith Fishbein, M.D.; rather, LSU has only reported to TRSL what LSU characterized as Dr. Fishbein’s “base pay” or “base salary;” (2) LSU did not deduct the employee contrí- *1264 bution for retirement on the total gross salary of Judith Fishbein, M.D., but rather only deducted and paid to TRSL the employee contribution on what it characterized as Dr. Fishbein’s “base pay” or “base salary;” (3) LSU never paid TRSL the required employer’s share on the total gross salary of Judith Fishbein, M.D., but only paid the employer’s share on what it characterized as Dr. Fishbein’s “base pay” or “base salary;” (4) LSU paid Judith Fishbein, M.D., an average of $17,916.05 per month during her highest thirty-six month period prior to her entering DROP; (5) Judith Fishbein, M.D., received only one pay check per month as an employee of LSU, which represented compensation for the work she performed as an | semployee of LSU.
After trial on the merits, the district court rendered judgment dismissing plaintiffs suit with prejudice and at her costs based on grounds that her claim had prescribed. In its written reasons for judgment, the district court stated:
Applying the law to the facts of this case, the court rules as follows: This court rules that the equitable doctrine of estoppel by laches is applicable to the claim of Dr. Fishbein. The court rules that under the doctrine of laches, she had a claim for those wages for a three year period preceding July 1,1998, when she entered the DROP program. (La. C.C. art. 3494). Since Dr. Fishbein was participating in the DROP program administered by the Teachers’ Retirement System, LSU no longer had an obligation to contribute to the retirement system on her behalf. (La. R.S. 11:787 B). Consequently, her claim has prescribed because suit was not filed timely.
Plaintiff appealed the adverse judgment, and the court of appeal reversed, finding that her claim had not prescribed and that her supplemental salary should be included in the calculation of her retirement benefits. Fishbein v. State ex rel. Louisiana State Univ. Health Sciences Ctr., 03-0765 (La.App. 1 Cir. 9/8/04), 887 So.2d 56. Specifically, although the court of appeal recognized that plaintiff is not seeking to recover retirement benefits, it characterized her claim as one for declaratory relief regarding the calculation of her retirement benefits. It found that neither the one-year prescriptive period provided by La. C.C. art. 3492 nor the three-year prescriptive period provided by La. C.C. art. 3494 governed plaintiffs claim. Consequently, it determined that plaintiffs action was subject to the ten-year prescriptive period provided by La. C.C. art. 3499, which began to run when plaintiff became eligible to retire. The court of appeal concluded that plaintiff became eligible to retire when she had twenty years of creditable teaching service, or August 15, 1990. It found that because she filed suit on August 7, 2000, or within ten years of this date, her claim was not prescribed. Additionally, the court of appeal refused to Lapply the doctrine of estoppel by laches to bar plaintiffs claims because a prescriptive period was provided by positive written law and it was unnecessary to resort to equity to determine whether plaintiff should be allowed to pursue her claim. Next the court of appeal determined that plaintiffs supplemental salary constituted “earnable compensation” as defined by La. R.S. 11:701(10) such that it should be included in her retirement benefits calculation. Finally, the court of appeal determined that plaintiff was entitled to injunctive relief.
This court granted certiorari upon LSU’s application to consider the peremptory exception of prescription and, if necessary, to determine whether the supplemental salary earned by plaintiff constitutes “earnable compensation” pursuant to La. R.S. 11:701(10). Fishbein v. State ex rel. Louisiana State Univ. Health Sci *1265 ences Ctr., 04-2482 (La.12/17/04), 888 So.2d 850.
Discussion

Prescription

The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings. Starns v. Emmons, 538 So.2d 275, 277 (La.1989). In the instant case, plaintiffs petition states that she seeks a declaration “that all earnable compensation paid to Dr. Judith Fishbein, M.D., ... be found to be part of the average monthly compensation for purposes of retirement and DROP benefits along with the average base salary.”[2] Generally, the right to seek a declaratory judgment does not itself prescribe. Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 708 (La.1993). However, the nature of the basic underlying faction determines the appropriate prescriptive period. Giroir v. Dumesnil, 248 La. 1037, 1058, 184 So.2d 1, 8 (1966). See also Montiville v. City of Westwego, 592 So.2d 390 (La.1992). This is because prescription is an issue in terms of a plaintiffs standing to seek the declaratory judgment. Church Point Wholesale Beverage Co., Inc., 614 So.2d at 708.
In the instant case, the basic action involves an allegation of LSU’s failure to properly certify plaintiffs total earnable compensation and its failure to cause a monthly remittance in the correct amount of its share of retirement contributions on plaintiffs behalf. While this action is ultimately determinative of plaintiffs retirement benefits, it is not in fact a claim for retirement benefits. Construing plaintiffs petition as a whole, her primary claim is essentially one for the proper reporting by LSU to TRSL of her total earnable compensation, including her supplemental salary, which would result in a higher level of contributions to TRSL on her behalf and, consequently, in a higher benefit at retirement. There is no dispute that plaintiffs retirement benefit has been correctly computed based upon her base salary as reported to TRSL by LSU. The dispute concerns whether her supplemental salary should have been reported to TRSL along with her base salary as earnable compensation and whether LSU should have made employer contributions to TRSL based upon plaintiffs supplemental salary.
This court has recognized that retirement contributions represent “an increasingly important part of an employee’s compensation for his services.” Andrepont v. Lake Charles Harbor & Terminal Dist., 602 So.2d 704, 708 (La.1992). Because of this, many courts have found in a variety of factual contexts that retirement benefits are deferred compensation for services. Id. In T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834, 851 (La.1975) (on rehearing), this court ^concluded that an employer’s contribution into a retirement-type plan “is not a purely gratuitous act, but it is in the nature of additional remuneration to the employee who meets the conditions of the plan. The employer expects and receives something in return for his contribution, while the employee, in complying, earns the reward. The credits to these plans, when made, are in the nature of compensation (although deferred until contractually payable).” Relying on this portion of T.L. James, the Andrepont court concluded there is ample support for determining that contributions to retirement plans are among the emoluments of *1266 employment and can be considered deferred compensation. Andrepont, 602 So.2d at 708.
We reaffirm our previous statements that contributions to retirement plans are a form of deferred compensation. Consequently, we find that plaintiffs claim is one for compensation for services rendered.[3] The applicable prescriptive period, then, is found in La. C.C. art. 3494, which provides that an action for the recovery of compensation for services rendered is subject to a liberative prescription of three years.[4]
|9The court of appeal rejected the argument that plaintiffs action was one for the recovery of compensation of services rendered and therefore held that La. C.C. art. 3494 was not applicable to plaintiffs claim. Instead, the court of appeal concluded that La. C.C. art. 3499, which provides that a personal action is subject to a ten-year liberative prescriptive period unless otherwise provided by legislation, applied to plaintiffs claim, perhaps partly due to the fact that La. Const, art. 10, § 29 expressly provides that membership in TRSL created a contractual relationship between plaintiff and LSU. While it is patently true that the constitution provides that membership in a retirement system of the state is a contractual relationship between employee and employer, it is not correct to assume that any action against the employer arising out of the contractual relationship is governed by the ten-year prescriptive period for personal actions pursuant to article 3499.
We dealt with this precise issue in Grabert v. Iberia Parish School Board, 93-2715 (La.7/5/94), 638 So.2d 645. In that case, plaintiffs, tenured supervisory level employees employed under four-year employment contracts with the Iberia Parish School Board, filed suit for breach of contract and seeking judgment for the recovery of past due wages. The Board filed an exception of prescription, relying on the three-year prescriptive period provided by article 3494 for the recovery of past due wages. Although successful in the district court, the court of appeal reversed, concluding that plaintiffs’ causes of action were for breaches of contract which prescribed in ten years pursuant to La. C.C. art. 3499. This court disagreed with the court of appeal, providing the following analysis:
A petition claiming breach of contract by the payment of wages less than what is due and seeking judgment for the underpaid wages is clearly a cause of action asserting the right to recover unpaid wages. Breach of contract is not a free standing cause of action. It is a legal premise, or principle, which gives rise to the right to claim some 1 ^substantive remedy at law. Here that *1267 remedy is the recovery of past due wages.
The actions are plainly for salary or wages past due under the allegedly appropriate salary index. The three year prescription provided for in article 3494 is directly and explicitly applicable. The nature of the claim (for under paid wages) is not something different because it arises out of breach of contract. The contract breached made provisions for the very wages sought.
This petition to recover underpaid “compensation for services rendered” is admittedly a personal action as defined by Louisiana Civil Code of Procedure article 422. However, the ten year prescriptive period set forth in article 3499, is only applicable to personal actions “unless otherwise provided for by legislation.” La.Civ.Code art. 3499 (West 1994). The prescriptive period for the instant consolidated suits for the recovery of underpaid wages is otherwise provided for in article 3494, for that article, as earlier indicated, provides a three year prescriptive period for personal actions seeking “compensation for services rendered.”
Id. at 646-47 (footnote omitted).
The same analysis is applicable to the instant case. Plaintiffs action is one for the recovery of additional contributions to TRSL that LSU should have made on her behalf, a claim that seeks recovery of compensation for services rendered. While all actions covered by article 3494 are grounded in contractual relationships, see id. at 647 (citing Starns v. Emmons, 538 So.2d 275, 277-78 (La.1989)), the ten-year prescriptive period of article 3499 does not apply in this case because there is a prescriptive period otherwise provided by legislation: the three-year prescriptive period of article 3494.
Having determined the applicable prescriptive period, the critical issue becomes when this prescriptive period commenced to run. Article 3495 addresses the commencement and accrual of the three-year liberative prescriptive period, providing:
This prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there Inis a continuation of labor, supplies, or other services.
Comment (b) following La. C.C. art. 3495 explains:
On principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible. See 2 M. Planiol, Traité élémentaire de droit civil 3 Pt. 2, at 358 (Louisiana State Law Institute trans.1959):
Liberative prescription begins to run as soon as the action accrues, or, as Pothier said “the day on which the creditor could institute his demand.” It cannot commence sooner, because the time given for prescription should be a time during which the action can be exercised, and one cannot reproach the creditor for not having acted at a time when he did not have the right to do so. Otherwise, it could happen that the right would be lost before it could be exercised, which would be as unjust as absurd (Cass.Civ., 11 Dec. 1918, D.1923.1.96, P. and S.1921.1.161).
We addressed a similar issue in Ledoux v. City of Baton Rouge, 99-2061 (La.2/29/00), 755 So.2d 877. There, plaintiff accumulated 2,128 hours of compensatory time between 1977 and 1985 pursuant to his employer’s unwritten policy that allowed certain employees to accumulate unlimited compensatory time that could be taken either as leave during employment or prior to employment, or as payment upon retirement. In 1985, the policy was changed to reduce the amount of compen *1268 satory time that could be accrued - and to provide that no employee could receive compensatory time off prior to resignation or retirement. In 1986, the policy was again changed to further reduce the amount of compensatory time that could be accrued. Finally, in 1988, a provision was amended to prohibit employees from being paid for unused compensatory time when their service ended.
Plaintiff retired in 1995, shortly after requesting that he be paid for the 2,128 hours of compensatory time that he had accrued under the old unwritten policy. When his request was denied, plaintiff filed suit seeking payment for his unused compensatory time. Defendants responded with an exception of prescription, arguing 11gthat plaintiffs claim for payment of compensatory time earned prior to 1985 was prescribed under La. C.C. art. 3494. The district court denied the exception of prescription and judgment was subsequently rendered in favor of plaintiff. The court of appeal reversed, finding that the applicable three-year prescriptive period commenced to run in 1986 when his right to accrue compensatory leave was changed.
This court reversed the judgment of the court of appeal, finding that La. C.C. art. 3494 provided the applicable prescriptive period, which commenced to run pursuant to article 3495 when plaintiff could act on his claim for payment of the compensatory time that had accrued prior to 1985. We found that under the applicable policies, when plaintiffs accrued compensatory time was reduced in 1985, he could neither be paid for the accrued compensatory time nor could he use the accrued time until he was terminated or he retired. Because plaintiff could not institute his demand sooner than the time of his resignation or retirement, we concluded that his right to claim payment for compensatory time was not exigible until he retired in 1995. Plaintiff filed suit a few months after he retired, therefore his suit had not prescribed.
In the instant case, we must determine when plaintiff could act on her claim for the proper reporting of her earnable compensation and for employer contributions on her behalf to TRSL based on her supplemental salary. La. R.S. 11:885 addresses the procedure for the collection of employers’ contributions as follows:
The collection of employers’ contributions on the earnable compensation of members shall be made as follows:
(1) The board of trustees' shall certify to the State Department of Education, the Board of Elementary and Secondary Education, or its successors, the state treasurer, and all employers the contribution rate to be paid as employers’ contributions.
[[Image here]]
|13(4) At the beginning of each school year, not later than September first of each year, the State Board of Education, or its successors, and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College shall certify to the state treasurer the monthly amount due by each college or university under its jurisdiction as the employer contribution at the rate determined and certified in Paragraph (1) of this Section to the retirement system based on the total earnable compensation from- state funds of each member of the system in the employ of the college or university. The state treasurer shall deduct from the state funds due each college or university monthly the employer contribution for each college or university and shall remit this amount directly to the secretary-treasurer of the board of trustees within five working days of the first of each month.
*1269 (5) The treasurer of each employer, other than the. employers enumerated in Paragraphs (2) and (3) hereof, shall transmit on or before the tenth day of each month to the secretary-treasurer of the board of trustees employers contributions on the earnable compensation of members for the preceding month at the rate determined and certified above.
(6) Each employer shall submit to the board of trustees at the close of each fiscal year, a check list of all members in its employ during that fiscal year showing each member’s earnable compensation for that year. Adjustments shall be made at this time for under or over remittance of employers contributions, if .any. Such adjustments shall take into consideration the amount of taxes received from the sheriff and ex officio tax collector of the particular parish under the'provisions of R.S. 11:875(4).
(7) All employers must pay the entire amount of the required employer contribution.
Additionally, La. R.S. 11:888 imposes upon each employer a duty to transmit monthly “a contributions report setting forth necessary salary and deduction information. ...”
LSU had a monthly obligation to properly report and remit contributions based on plaintiffs earnable compensation. Thus, plaintiffs claim is based on the fact that LSU submitted incorrect information regarding her earnable compensation and remitted contributions on her behalf in an incorrect amount every month. Because | uplaintiff s claim is essentially one for recovery of compensation for services rendered, we find she could have acted on her claim the first month LSU paid her supplemental salary and failed to remit its share of employer contributions to TRSL based on her supplemental salary. Once LSU first paid plaintiff a supplemental component in her salary and failed to contribute its portion based upon this component she alleges was part of her earnable compensation, plaintiffs claim could be acted upon. Therefore, plaintiffs right to claim recovery for compensation for services rendered was exigible beginning in 1980. Article 3495 provides that the three-year prescription “accrues as to past due payments even if there is a continuation of labor, supplies or other services.” Accordingly, when plaintiff filed suit on August 7, 2000, any claims she had for recovery of compensation for services rendered prior to August 7, 1997, were prescribed.
Plaintiff entered DROP on July 1, 1998. Pursuant to La. R.S. 11:787(A)(1), during participation in DROP, the member remains a member of TRSL, but neither regular member nor employer contributions to the regular plan shall be payable. Further, subsection (B) provides that average compensation and creditable service are fixed as of the date a member’s participation in DROP begins. Thus, in the instant case, all of plaintiffs claims for recovery of compensation for services rendered are prescribed except for those that accrued between August 7, 1997, and July 1,1998.
In this particular case, plaintiff admitted at trial that it was her understanding by 1989 that LSU’s contributions to TRSL on her behalf were based only upon her base salary, so there can be no claim that plaintiff was unaware of the existence of her cause of action. Additionally, plaintiffs subjective fear of being terminated if she sued LSU prior to her retirement cannot serve to somehow ameliorate the harshness of prescription in this case. There is no evidence that LSU had ever taken adverse |1saction against an employee for exercising his or her right to sue for recovery of compensation for services rendered. Plaintiff presented no objective basis for *1270 her fears. While we are not unsympathetic to plaintiffs concerns and understand the magnitude of any decision to sue an employer, we cannot attach legal significance to these subjective concerns.
Regarding that portion of plaintiffs claim that is not prescribed, we find no merit in defendant’s affirmative defense of estoppel. As the court of appeal correctly stated in the instant case, equitable considerations and estoppel cannot be permitted to prevail when in conflict with positive written law. See La. C.C. art. 4 (“When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity..."); Morris v. Friedman, 94-2808, p. 10 (La.11/27/95), 663 So.2d 19, 26; Palermo Land Co. v. Planning Comm’n of Calcasieu Parish, 561 So.2d 482, 488 (La.1990). La. C.C. art. 3457 provides, “There is no prescription other than that established by legislation.” Comment (b), which explicitly addresses the doctrine of laches, states, “Under the Louisiana legal system, there is no room for the common law doctrine of laches.” Citing article 3457, this court has previously concisely stated, “The common law doctrine of laches does not prevail in Louisiana and the legislature may create, shorten, lengthen or abolish prescriptive periods at its discretion.” Picone v. Lyons, 601 So.2d 1375, 1377 (La.1992). See also Corbello v. Sutton, 446 So.2d 301, 302 (La.1984) (“[T]he doctrine of laches has no place in the law of this state.”). While the legislature and the opinions of this court have made it clear that the common law doctrine of laches does not belong in Louisiana’s system of civil law, there are nevertheless opinions by this court that leave open the possibility of the application of the doctrine in certain cases. See e.g. T.D. v. M.M.M., 98-0167 (La.3/2/99), 730 So.2d 873; Bradford v. City of Shreveport, 305 So.2d 487 (La.1974). Because the doctrine of laches is in conflict with this state’s civil laws of prescription, the statements contained in those civil opinions that suggest the doctrine of laches may be applicable under certain circumstances are hereby repudiat-éd. We find no other equitable basis upon which LSU can' be afforded relief as to plaintiffs claims that have not' prescribed; therefore, we reject its affirmative defense of estoppel.

Earnable Compensation

Having determined .that some of plaintiffs claims are not prescribed, we now turn to the issue of whether plaintiffs supplemental salary should have been classified as earnable compensation.
Plaintiffs earnable compensation determines the amount of her monthly contribution and the amount of LSU’s monthly contribution to TRSL. La. R.S. 11:701(10) defines “earnable compensation” as:
the compensation earned by a member during the full normal working time as a teacher. Earnable compensation shall not include per diem, post allowances, payment in kind, hazardous duty pay, or any other allowance for expense authorized and incurred as an incident to employment, nor payments in lieu of unused sick or annual leave, nor retroactive salary increases unless such increase was granted by legislative act or .by a. city/parish systemwide salary increase, nor payment for discontinuation of contractual services, unless the payment is made on a monthly basis. If a member is granted an official leave and he makes contributions for the period of leave, “earnable compensation” shall not include compensation paid for other employment which would not have been possible without the leave. The board of trustees shall determine whether or not any other payments are to be classified as earnable compensation. ■ -
*1271 Interpretation of this statute begins, as it must, with the language of the statute itself. David v. Our Lady of the Lake Hosp., Inc., 02-2675, p. 11 (La.7/2/03), 849 So.2d 38, 46; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). When a law is |17elear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. When the wording of a section of the revised statutes “is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” La. R.S. 1:4.
Under the plain language of the statute, plaintiffs supplemental salary is earnable compensation if it was compensation earned by her, a member, “during the full normal working time as a teacher” and not otherwise excluded. We agree with the court of appeal’s conclusion that plaintiffs supplemental salary should have been included as part of her earnable compensation.
A teacher is defined by La. R.S. ll:701(33)(a)(ii) to include “any ... unclassified employee at any state college or university.” Trial testimony revealed that plaintiff was an unclassified faculty member of the School of Medicine, Department of Pediatrics. Plaintiffs job duties included teaching medical students and residents, providing care to hospital patients, and various administrative duties encompassing the coordination of pediatric training programs, supervision of departmental activities for graduate and post-graduate educational programs and inpatient and outpatient services, and organization and implementation of the accreditation of the pediatric residency and student program. While LSU paid plaintiff a base salary and a supplemental salary for performing all of her duties as a faculty member, these components of her salary were not designated as separate payments for the performance of different specified duties. Instead, plaintiff testified that her salary was not contingent on the number of patients she treated.
Mr. Robert Plaisance, the Assistant Vice-President for the LSU System Office, testified that base salary is determined with regard to academic rank, years of service, 11sdegree, and credentials. He explained that LSU paid similar base salaries to physicians appointed as assistant professors who had relatively equal credentials and years of service. He further testified that supplemental salaries were based on market demands and the additional duties and responsibilities placed on a particular faculty member and were used to provide the faculty member with an acceptable gross level of compensation. Mr. Stan Tefft, who served as the assistant personnel director of the LSU Medical Center, described supplemental salary as “additional compensation based on a faculty member’s additional earnings, usually through either a contract or private patient income.” He further explained that the supplement portion was not really a bonus, but was part of a faculty member’s salary.
. In light of the record testimony in this case, we find that plaintiffs supplemental salary was “compensation earned by a member during the full normal working time as a teacher.” Plaintiff was paid a pre-determined amount of money as salary for the various duties she performed as an unclassified employee at LSU. Her salary was not contingent upon the number of patients she treated. Her supplemental salary was provided to her as a result of market conditions and the responsibilities she undertook. Consequently, we conclude that plaintiff earned her supplemental salary during her full normal working time as a teacher.
*1272 The second sentence of La. R.S. 11:701(10) that excludes several different types of pay from the definition of earna-ble compensation does not explicitly exclude supplemental salary. Further, like the court of appeal, we find it is not sufficiently analogous to any of the items of pay expressly excluded from the definition to warrant its exclusion. LSU’s arguments that supplemental salary is not included in earnable compensation because neither LSU nor TRSL has ever included this type of pay in its calculations is unpersuasive. The fact that LSU did not consider supplemental pay Impart of an employee’s earnable compensation prior to the merger of its retirement system with TRSL and agreed with TRSL to continue this practice after the merger is irrelevant. The clear words of the statute and the nature of plaintiffs supplemental salary convince us that supplemental salary should be included in the definition of earnable compensation. There is no evidence that the legislature intended to exclude supplemental salary from the definition. In fact, if LSU is correct that there was testimony to a legislative committee regarding LSU’s practice of excluding supplemental salary from its understanding of earnable compensation, then the legislature’s failure to exclude supplemental salary from the definition supports our conclusion that it is included as part of plaintiffs earnable compensation.
La. R.S. 11:701(10) provides that the “board of trustees shall determine whether or not any other payments are to be classified as earnable compensation.” The record reveals, however, that the board of trustees never addressed the issue of whether supplemental salary was to be classified as earnable compensation. LSU’s assertions that this issue must first be presented to the board of trustees before a court can rule on the issue is without merit. While the board of trustees is empowered by statute to address the issue, and LSU or plaintiff could have requested that it make a determination of whether supplemental salary was earnable compensation, the fact that the board did not make such a determination does not preclude a court from resolving the dispute at issue. The opinion rendered by the court of appeal appears to indicate that the board no longer needs to make a determination regarding the classification of earnable compensation. We need not address this issue as the board has made no attempt to determine whether supplemental salary is to be classified as earnable compensation.
For all of the above reasons, we conclude that plaintiff is entitled to relief 12odeclaring that the supplemental salary she earned between August 7, 1997, and July 1, 1998, was part of her earnable compensation.

Injunctive Relief

In addition to requesting a declaratory judgment, plaintiff also requested the issuance of a writ of mandamus ordering that her earnable compensation be certified to include both her base salary and her supplemental salary, that LSU fund her retirement account in the appropriate amount, and that LSU authorize the correction and payment of any benefits due and owing based on her total salary. Although framed as a request for a mandamus action, this request was essentially a request for a mandatory injunction ordering a public official to certify that her earnable compensation includes both her base and supplemental salaries, to fund her retirement account in the appropriate amount, and to correct and pay any benefits due and owing. This request for a mandatory injunction was an appropriate method of demanding “further relief’ as provided for in La. C.C.P. art. 1871 in the event that plaintiff prevailed on her demand for declaratory relief. Chauvet v. *1273 City of Westwego, 599 So.2d 294, 296 (La.1992).
As correctly found by the court of appeal, plaintiff is entitled to a correction of her “earnings or salary” for the period of August 7, 1997, through July 1, 1998, pursuant to La. R.S. 11:888(C)(2), which provides:
Any corrections as to earnings or salary made more than three years after a contributions report is due the retirement system shall be a purchase of service credit under the provisions of R.S. 11:158. The employer institution, in its discretion, may pay not more than fifty percent of the purchase price. However, if it makes such payment, it shall then make such payment, in the same percentage, with respect to all other purchases under this Paragraph, provided, however, that if the error is the total fault of the employer, the employer shall pay the total purchase cost.
Thus, a purchase of service credit must be undertaken. La. R.S. 11:158 provides in | ¡^pertinent part:
C.(l) In order for a purchase of service credit, which is otherwise authorized, to be effective, there shall be paid into the applicable retirement or pension system, fund, or plan the greater of either:
(a) An amount which, on an actuarial basis, totally offsets the increase in accrued liability of the system resulting from the purchase of the credit.
(b) The employee and employer contributions that would have been paid to the applicable system; fund, or plan, plus interest thereon, compounded annually from the time the contributions would have been paid, at the assumed actuarial valuation rate of interest of the system, fund, or plan in which the credit is being purchased.
(2)(a) The amount payable shall be calculated based on the actuarial funding method, assumptions, and tables in use by the system at the time of application for credit.
(b) The actuary may modify the assumptions utilized to reflect the effects of anti-selection.
The court of appeal correctly observed that this statute does not specify whether the employer or the employee or both are to pay the required amounts. In the instant case, plaintiff has agreed to pay her share of any contribution required to be paid to TRSL and to pay any supplemental contribution required by an actuary to make TRSL whole. We recognize the unusual nature of this particular case due to the prescription issue involved. Consequently, we remand the request for injunctive relief to the district court for further proceedings consistent with this opinion and with instructions that it appoint an actuary to determine the required amount payable pursuant to La. R.S. 11:158. TRSL is not to be made to bear any burden of the increased costs, if any, as a result of this judgment. The district court should then hold an evidentiary hearing to determine the amounts payable by both LSU and plaintiff and to consider the request for injunctive relief.
Conclusion
_[gFor the reasons assigned, we conclude that plaintiffs claim is one for the recovery of compensation for services rendered and, as such, is subject to the three-year prescriptive period provided in La. C.C. art. 3494. Thus, when plaintiff filed suit on August 7, 2000, any claims she had for recovery of compensation for services rendered prior to August 7, 1997, were prescribed; however, her suit was timely filed with respect to those claims for recovery of compensation for services rendered that accrued between August 7, 1997, and July 1, 1998. As to those claims that have not prescribed, we find that plaintiffs supple *1274 mental salary was included in the definition of earnable compensation. Plaintiffs request for injunctive relief is remanded to the district court for further proceedings and with instructions. The judgment of the court of appeal is therefore affirmed in , , , . , part and reversed m part.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
VICTORY, J., concurs with reasons.

. Plaintiff's total gross salary was reported on her annual W-2s, so her supplemental salary was subject to withholdings for federal and state income taxation purposes. Social security taxes were apparently not withheld from any portion of her salary.

. Although plaintiff initially sought such a declaration regarding her earnable compensation for purposes of her DROP benefits, the court of appeal noted that at oral arguments before that court, plaintiff's counsel represented that she "does not seek additional DROP benefits.” Accordingly, any issue relating to plaintiff's earnable compensation for purposes of DROP is not before us.

. Plaintiff, in fact, does not dispute this assessment of her claim. Although agreeing with the result reached by the court of appeal, plaintiff states the following in her brief to this court:
Counsel suggests that although Judge Kuhn’s analysis, is supported in the law, reached the proper result and thus should be affirmed, there exists an equally valid argument that Dr. Fishbein's claim is one for compensation for services rendered as that phrase is used in Civil Code Article 3494.... Clearly, Dr. Fishbein's claim is one for compensation for services rendered. She does seek to recover monetary funds from LSU albeit these funds would be paid to TRSL. We submit that her retirement benefits are a form of deferred compensation.

. This conclusion is further supported by La. R.S. 11:888, which provides the method by which corrections to a contributions report that erroneously reports the earnings or salary of a member are made. The statute prescribes two different methods of correcting the error depending upon whether more or less than three years have elapsed since the date the contributions report was due.