# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-670


**L. C. DESHOTEL**

**VERSUS**

**VILLAGE OF PINE PRAIRIE**


**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 69062-B
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, J. David Painter, and James T. Genovese, Judges.

**REVERSED.**


**Genovese, J., concurs in the result.**

**Jonathan Clyde Vidrine**
**West & Vidrine**
**P. O. Drawer 1019**
**Ville Platte, LA 70586**
**(337) 363-2772**
**Counsel for Plaintiff-Appellee:**
**L. C. Deshotel**

**Randall Brian Keiser**
**Keiser Law Firm**
**P.O. Box 12358**
**Alexandria, LA 71315-2394**
**(318) 443-6168**
**Counsel for Defendant-Appellant:**
**Village of Pine Prairie**

**PICKETT, Judge.**

The Village of Pine Prairie (the Village) appeals a judgment of the trial court ordering it to pay the Village's share of the contributions to the Municipal Police Employees' Retirement System (MPERS) for former Police Chief L. C. Deshotel retroactive to the date of his appointment as chief in 1991. Chief Deshotel appeals the trial court's judgment insofar as it denied his demand for the payment of interest and penalties for the purchase of credit in MPERS.

## STATEMENT OF THE CASE

Chief Deshotel was appointed Chief of Police for the Village of Pine Prairie in September 1991. He subsequently ran for re-election and remained as chief of police until his retirement on December 31, 2008. Shortly after his initial appointment, Chief Deshotel asked Mayor Terrell McCauley if he was eligible for a retirement system. Mayor McCauley indicated that there was no retirement other than the Social Security system. In fact, this information was incorrect. Pursuant to La.R.S. 33:2373, any police employee in a municipality that had not passed an ordinance exempting the municipality from participation in MPERS before January 1, 1978 was automatically a member of MPERS unless he executed an affidavit opting out of the system. It is uncontradicted that the Village had not passed the required ordinance, and it never presented Chief Deshotel with any form giving him the opportunity to opt out of the system.

Chief Deshotel did not pursue the matter any further until Clifford Wayne Clark was hired as a police officer for the Village. When Mr. Clark was hired in 2001, he asked the mayor and the town clerk if he was eligible for any retirement, and they informed him that he was not. Chief Deshotel and Mr. Clark frequently

1

discussed the issue of retirement. Mr. Clark attended a police academy in St. Martinville from January through March 2004. While there, he discussed the retirement system with some of the other attendees and determined that he was likely eligible for MPERS. When Mr. Clark returned to the Village, he passed along this information to Chief Deshotel. Chief Deshotel accompanied Mr. Clark and two other Village police officers to a meeting with an attorney in Alexandria on about April 17, 2004. The attorney told Chief Deshotel and the officers that they were eligible for MPERS but they would have to buy back their earlier years in the system to get credit. Mr. Clark contacted MPERS, who informed him that the Village was required to give him the option to enroll MPERS. Mr. Clark asked MPERS to send the information to the Village. At this time, the Village began to offer retirement to all of its officers. However, the Village determined that because Chief Deshotel was over fifty at the time, he was ineligible to enroll in MPERS.

Chief Deshotel continued to pursue the matter. In October 2006, he got a copy of the MPERS handbook which indicated he was eligible for the system if he purchased his credit dating back to 1991 despite his age. He contacted an attorney and began discussions with MPERS and the Village. MPERS ultimately determined that he could become a member if he purchased all of his credit in the system back to his original date of hire within six months of his enrollment. He enrolled in the system and began making payments on October 26, 2006. The cost to purchase 15.14 years of credit (from September 5, 1991 through October 26, 2006) would be $131,628.06, broken down as follows:

| | |
|---|---|
| Employer contributions | $ 43,838.56 |
| Employee contributions | $ 22,065.80 |
| Interest and Penalties for Late Enrollment | $ 65,723.70 |

2

Chief Deshotel entered into a payment plan with MPERS to pay the entire amount over five years. He demanded that the Village pay the employer portion and the penalties and interest. When the Village refused, he filed this suit on June 29, 2007.

Following a trial on November 18, 2008, the trial court found in favor of Chief Deshotel. The trial court denied the Village's exception of prescription. The trial court ordered the Village to pay its portion, but specifically stated that no penalties or interest should accrue against Chief Deshotel's account. The Village filed a Motion for a New Trial asking the trial court for a specific amount that the Village had to pay, but the trial court denied the motion. The Village and Chief Deshotel have both appealed the judgment of the trial court.

## ASSIGNMENTS OF ERROR

The Village asserts three assignments of error:

1.  The trial court committed legal error when it denied the exception of prescription.

2.  The trial court committed legal error when it ruled that the Village owed the plaintiff a duty to (a) educate him on his legal rights and duties under the MPERS statute, and (b) provide plaintiff with an MPERS enrollment affidavit never given to the Village.

3.  The trial court abused its discretion when it denied the "limited" motion for a new trial.

Chief Deshotel asserts one assignment of error, arguing that the trial court erred by not casting the Village with the penalties, interest, and experience costs.

## DISCUSSION

We begin our analysis of this case by addressing the second assignment of error raised by the Village. The Village argues that the trial court erred in finding that it owed a duty to Chief Deshotel to inform him about MPERS. Instead, argues the

3

Village, the Board of Trustees of MPERS has the duty to inform new employees that they are eligible for the retirement system.

"The question of whether a duty exists in a particular set of circumstance is a question of law for the court to decide." *Mathieu v. Imperial Toy Corp.*, 94-952, p. 5 (La. 11/30/94), 646 So.2d 318, 322. This court has held that a school board does not have a duty to inform an employee about the existence of a public retirement system. *Simon v. Lafayette Parish Sch. Bd.*, 93-700 (La.App. 3 Cir. 2/2/94), 631 So.2d 626. In our case, though, the evidence is uncontroverted that Chief Deshotel asked the mayor at the time he was appointed if he was eligible for a retirement system and that the mayor incorrectly told him that he was not. In fact, the statute creating MPERS clearly indicates that Chief Deshotel was eligible for membership in the retirement system in 1991. La.R.S. 33:2373. We find that while the Village may not have had a duty to inform Chief Deshotel about his eligibility, the Village, as his employer, did have a duty to give Chief Deshotel accurate information about his eligibility for MPERS. The Village breached that duty in 1991.

Having established that the Village owed a duty to Chief Deshotel, we now turn to the Village's first assignment of error. The Village argues that Chief Deshotel's claims against the city have prescribed. We must agree.

The trial court found that the applicable prescriptive period is the ten year period for personal actions. In *Fishbein v. State ex rel. Louisiana State University Health Sciences Center*, 04-2482, p. 8 (La. 4/12/05), 898 So.2d 1260, 1266 (footnotes omitted), the supreme court stated:

> [C]ontributions to retirement plans are a form of deferred compensation. Consequently, we find that plaintiff's claim is one for compensation for services rendered. The applicable prescriptive period, then, is found in La. C.C. art. 3494, which provides that an action for the recovery of

4

compensation for services rendered is subject to a liberative prescription of three years.

The record is also clear that in April 2004, Chief Deshotel became aware that he should have been allowed to participate in the retirement system in 1991 after he attended the meeting with an attorney in Alexandria. While Chief Deshotel could not remember the discussions at the meeting, Mr. Clark was clear that during this meeting they discussed the issue of the Village paying some portion of the retirement dating back to 1991. Whether or not prescription had been interrupted or suspended before April 2004, we find that prescription began to run when Chief Deshotel discovered that he had a claim against the Village. His continued reliance on the mayor's advice did not suspend or interrupt prescription. Therefore, when Chief Deshotel filed suit in June 2007, the only claims that had not prescribed were those from June 2004 forward.

In its third assignment of error, the Village argues that the trial court erred by not casting the Village with a dollar amount of damages. In his assignment of error, Chief Deshotel argues the Village should be cast with the additional costs associated with the purchase of his previous time in the retirement system. Since we find that these claims have prescribed, we pretermit discussion of these assignments of error.

## CONCLUSION

The judgment of the trial court is reversed. Costs of this appeal are cast against Chief Deshotel.

**REVERSED.**

5