CARAWAY, J.
_JjA retired fire inspector filed suit against the Mayor and City of Monroe, Louisiana (the “City”), and the Louisiana Firefighters’ Retirement System (“FRS”) seeking service credit of 4.85480 (“4.8”) years from his employment with the Monroe Fire Department. Those 4.8 years were not credited by FRS, which now pays the plaintiff retirement benefits for all other years of his public employment. The City filed an exception of prescription seeking dismissal of the claims against it, for declaratory judgment, mandamus and accounting since plaintiff knew of the facts giving rise to the suit some 20 years earlier. The plaintiff argued that it was his retirement, only four months before suit was filed, that triggered the running of prescription in 2002. The trial court found merit to the City’s argument and dismissed all claims of plaintiff with prejudice as to all defendants. This appeal by the firefighter ensued. We affirm in part and reverse in part.

Facts

James R. Moore was first employed by the Monroe Fire Department as a Fireman First Class on November 15, 1965. He resigned from the position on May 27, 1970. Moore was re-employed by the Monroe Fire Department on September 5, *290 1979, but was laid off on December 31, 1979. During these periods of employment, Moore allegedly paid into the City of Monroe Firemen’s Pension Relief Fund (“MFPRF”). However, the amount of Moore’s alleged pension payments during these years of employment (4 years, 11 months and 10 days) is apparently unknown. ^ Likewise, thejgspecific terms of any retirement agreement between Moore and MFPRF are not established in the record.
From May 27, 1980, to September 15, 1984, Moore worked for the City’s Planning and Urban Development Department contributing as an employee to the Municipal Employees Retirement System (“MERS”). On September 16, 1984, Moore was transferred to the Monroe Fire Department where he began working as a fire inspector until he retired on February 1, 2002. Even after his transfer to the Monroe Fire Department, Moore continued to pay into MERS until January 31, 1996.[1]
By ordinance in October 1980, the Monroe City Council approved the merger of the MFPRF into the State Firefighters’ Retirement System (“FRS”). The merger agreement between the FRS Board of Trustees and the City was executed in early May 1981, but covered only active contributing members of MFPRF. Because at that time Moore was not an active contributing member of MFPRF, he was not included in the merger and continued to pay into MERS.[2]
jn june 1935, Monroe City Council pasged Ordinance No. 7810, which expanded retirement coverage in FRS to “all eligible former employees, retired members and beneficiaries” of the MFPRF. ¶⅛ final merger agreement between FRS Board of Trustees and the City, effective |sJune 1, 1986, nevertheless excluded Moore from the list of 36 named beneficiaries[3] included in the agreement. An appendix to this agreement stated that the source of funds from which the required payment was to be made was City funds.
Evidence contained in the record shows that from 1984-2008, Moore informally and unsuccessfully persisted in his attempts to have the 4.8 years of service credit transferred ultimately to FRS. In December 1981, Moore applied for reciprocal recognition of the 4.8 years in MERS (see exhibit JM-1 attached to Moore’s deposition). Apparently his request was denied. In September of 1984, immediately upon his re-employment with the Monroe Fire Department, Moore sought membership in FRS, which included transfer of his “service credit actually served as a firefighter.” This request was denied because Moore was contributing to MERS and did not *291 qualify for transfer to FRS under recently enacted legislation (see exhibit JM-3 attached to Moore’s deposition). Subsequently, in May 1985, Moore again requested that his 4.8 years be “accepted into the Firefighters’ Retirement System” (see Exhibit JM-5 attached to Moore’s deposition). Moore’s request was denied because he did not fit another statutory requirement of being a line class firefighter.[4]
14Ultimately, Moore did not become eligible to participate in FRS until February 1996 when the statutory requirements for participation were expanded to include any full-time firefighter or “any person in a position in the municipal fire and police civil service system.” In April 1998, FRS board of trustees authorized the City “to purchase” the 4.8 years at $53,627 (See JM-9 attached to Moore’s deposition).[5] Moore also requested FRS to calculate the cost of the service credit for the 4.8 years. The City never acted and Moore concedes that he did not personally pay the money.[6]
Moore retired on February 1, 2002. On July 22, 2002, he instituted this action for declaratory judgment and accounting against the Mayor, the City and FRS, seeking judicial recognition of his entitlement to 4.8 years service credit. Moore also sought an alternative writ of mandamus against the Mayor and City[7] commanding these defendants to enter into an agreement with FRS merging all former eligible former employees including plaintiff into FRS in accordance with Ordinance No 7810.[8]
liiOn May 15, 2013, the City filed a peremptory exception of prescription, arguing that the 3-year prescriptive period applicable to retirement benefits had run based upon Moore’s 20-year knowledge that his *292 4.8 years were not credited to any retirement system.
Moore did not contest that 3-year prescriptive period, but argued that his right to sue for the credit did not accrue until he became eligible for retirement in 2002. Because his suit was filed 5 months after his retirement date, Moore contended that the suit was timely and would have been premature before his retirement.
FRS did not file an exception of prescription, submitting only a memorandum “relative to co-defendant’s” peremptory exception of prescription, which did not assert prescription regarding Moore’s FRS claim.
At the hearing on the exception on July 31, 2013, only counsel for Moore and the City appeared for argument. Without objection, Moore introduced into evidence the above-referenced documents. The trial court rendered an oral ruling in favor of the City, finding that Moore’s knowledge of the fact that the 4.8 years was not included in his retirement service credit calculations began the prescriptive period more than 3 years before suit was filed.
The trial court’s written judgment on August 14, 2013, provided as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Exception of Prescription filed herein by Defendant, City of Monroe, is granted and all claims of the | f,Plaintiff James R. Moore are dismissed with prejudice as to all defendants, with costs being assessed to Plaintiff.
On appeal, Moore argues that the trial court erred in finding that his claims against the City for additional retirement credit had prescribed. He also argued that the trial court improperly supplied the prescription exception for FRS.[9]

General Retirement Law

Moore fails to direct this court to any applicable statutory or contractual provisions specifically governing his retirement rights with respect to MFPRF during his early employment as a firefighter in the 1960s. Nevertheless, an overview of Louisiana’s retirement provisions will be instructive regarding his retirement claims.
La. Const, art. 10 § 29 expressly provides that membership in any retirement system of the state or of a political subdivision thereof shall be a contractual relationship between employee and employer. The general governing provisions for all state retirement systems provide for reciprocal recognition of credited service in state, parochial and municipal systems and transfer of credit between systems. La. R.S. 11:142; La. R.S. 11:143. Likewise, La. R.S. 11:441.1 specifically addresses issues involving an employee’s termination of his membership in a public retirement system, his receipt of a refund of contributions, and his later use of those refunded contributions in another system for service credit.
Within the varying retirement systems established by Louisiana’s statutory law, retirement is defined as a withdrawal from active service with 17a retirement allowance granted. See, for example, La. R.S. 11:2252(17) included in the Louisiana State Employees’ Retirement System (LASERS). Differing age and service requirements for retirement eligibility are set forth under the different state retirement plans as well. See La. R.S. 11:2256, setting forth age and service requirements for FRS members and La. R.S. 11:441, which provide age and service eligibility requirements for LASERS members. Upon meeting eligibility requirements, an employee’s retirement rights may be said *293 to vest at a time when the member in a retirement system obtains retirement eligibility as to age and service. See, e.g., La. R.S. 11:403(38).
Options for a refund of contributions by employees who leave employment under the various retirement plans are also provided. For example, any FRS member who ceases to be an employee, except by death or retirement, may apply for and obtain a refund of the amount of the accumulated contributions on deposit in his individual account. La. R.S. 11:2256(E). LASERS participants who terminate participation in the plan and employment may, at the participant’s option, receive a lump sum payment or systematic disbursements under La. R.S. 11:450.
Relative to the continuation of the MFPRF is La. R.S. 11:3341, et seq., effective June 25, 1991. Those provisions continue the MFPRF for the pensioning of retired, superannuated, or disabled members of the fire department and alarm system and the widows and orphans of same. The board of trustees of the Monroe Firemen’s Pension and Relief Fund is created as a body politic under La. R.S. 11:3342, which is given exclusive |8control and management of the fund under La. R.S. 11:3343. The MFPRF includes “all monies, funds, properties, real and personal, and assets now belonging to or due the Firemen’s Pension Fund of Monroe, Louisiana,” but excludes “that amount of monies and assets transferred to the Firefighters’ Retirement System agreed upon in the contract signed by officials of the Firefighters’ Retirement System and the officials of the City of Monroe.” La. R.S. 11:3344.

Discussion

The issue presented concerns both the nature of Moore’s claims against the City and the time of commencement for the running of prescription. Moore asserts that the critical event for the commencement of prescription was the time of his first receipt in 2002 of FRS retirement benefits, which did not compensate for his 4.8 years of service.
The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings. Fishbein v. State, ex rel. Louisiana State Univ. Health Sciences Ctr., 04-2482 (La.4/12/05), 898 So.2d 1260. Generally the right to seek a declaratory judgment does not itself prescribe. Id. However, the nature of the basic underlying action determines the appropriate prescriptive period because prescription is an issue in terms of a plaintiffs standing to seek the declaratory judgment. Id. The Louisiana Supreme Court has found in a variety of factual contexts that retirement benefits are deferred compensation for services. Fishbein, supra. The court has held that contributions to retirement plans are a form of deferred compensation. Id. The applicable prescriptive period |9for such a claim is found in La. C.C. art. 3494, which provides that an action for recovery of compensation for services is subject to li-berative prescription of 3 years. Id. Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of 10 years. La. C.C. art. 3499. Actions on contracts are normally regulated by 10-year prescription. Schoen v. Walling, 31,598 (La.App.2d Cir.2/24/99), 728 So.2d 982.
Prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services. La. C.C. art. 3495.
Mandamus, codified in La. C.C.P. art. 3861 et seq., is an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief. The *294 only circumstance under which courts may cause a writ of mandamus to issue is where the actions sought to be performed by the legislature are purely ministerial in nature. Hoag v. State, 04-0857 (La.12/1/04), 889 So.2d 1019. A ministerial duty, the performance of which may be required of the head of a department by judicial process, is one in which nothing is left to discretion. Hoag, supra; Felix v. St Paul Fire and Marine Ins. Co., 477 So.2d 676 (La.1985). A ministerial duty is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law. Hoag, supra. If a public officer is vested with any element of discretion, mandamus will not lie. Id.
|TnIt has been held that mandamus is unavailable when injunctive or declaratory relief is also sought. Wiginton v. Tangipahoa Parish Council, 00-1319 (La.App.lst Cir.6/29/01), 790 So,2d 160, writ denied, 01-2541 (La.12/7/01), 803 So.2d 971. Likewise, it has been determined that it is the underlying action that determines the appropriate prescriptive period for mandamus. Id.
Moore has not provided this court with the agreement or plan that governed any contributions made by him for his retirement during the 4.8 years. It is therefore unclear whether the City had obligations under the retirement plan or whether MFPRF is the responsible party. One of the documents filed into evidence by Moore for the hearing on prescription indicated (as a hearsay document) that during the time of his 4.8 years of employment Moore would have been required to work 20 years as a member of the MFPRF retirement system to be eligible for retirement benefits. Because Moore has not established the retirement agreement governing his retirement eligibility for the 4.8 years, we can find only that he may have been entitled to refunds of his contributions to the MFPRF system when he left employment, first in 1970 and later in 1979. Moreover, we find that only MFPRF, MERS, and FRS were the state or municipal retirement systems in which Moore earned.his service credits. Because of the mergers and other changes involving those systems, the FRS is the retirement system from which any retirement benefits for Moore’s 4.8 years might be paid.
The City, therefore, has not been shown to be the party responsible for the payment of retirement benefits to Moore, and at best, may have owed |uhim only a refund for his retirement contributions made during the 4.8 years. The possible entitlement of a refund from the City would be a personal action in contract for which the prescription of 10 years applies.
The record also demonstrates to us that Moore had knowledge of the dispute surrounding the retirement credit for the 4.8 years well in excess of 10 years before this suit was filed. Documentation submitted jointly by the parties at the hearing on the prescription exception shows that in 1981, 1984 and 1985, Moore sought recognition of the 4.8 years in both MERS and FRS.
With this finding, we also reject Moore’s claim for mandamus. Since Moore never demonstrated that he ever met the eligibility requirements to be vested in MFPRF, we do not find any ministerial duty owed by the City and Mayor.
Finally, we do agree with Moore’s argument that FRS was improperly included in the judgment causing the dismissal of Moore’s separate claims against FRS. We find his cause of action against FRS different from his vague assertions against the City. Most importantly, the trial court cannot supply the defense of prescription for FRS, which never urged *295 the peremptory exception. 927(B). La. C.C.P. art.

Conclusion

For the foregoing reasons, we affirm that portion of the judgment of the trial court dismissing Moore’s claims against the City and Mayor of Monroe. We reverse that portion of the judgment which dismissed Moore’s claims against FRS and remand for further proceedings. Costs of this | ^appeal in the amount of $148.00 are assessed equally to Moore and FRS.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PITMAN and GARRETT, JJ.
Rehearing denied.
PITMAN, J., would not consider.

. This service time, later credited to his subsequent fire service, is not a part of this litigation.

. It is apparently Moore's contention, however, that the funds he contributed to the MFPRF were used to fund the merger. In its answer, FRS argues that Moore was classified as an inactive employee, who had service credit in the MFPRF, but was no longer participating in the plan. FRS contends that although Moore had previous employment stints, the amount of his credit was not enough to vest him in FRS. FRS contends that all such employees were excluded from the merger and that any assets that were attributable to Moore remained in the MFPRF.

.For purposes of the extended agreement, "beneficiary” included any person receiving a regular retirement benefit, disability retirement benefit, or survivor benefit and person eligible to receive surviving spouse benefits in the future upon the death of a regular retiree or disability retiree who is covered under the terms of the agreement. In his petition, Moore concedes that he was not included in the merger.

.Other documents entered into evidence included Moore’s deposition, 1995 correspondence between City Attorneys and FRS General Counsel in which the City states its willingness to "underwrite the cost of including Mr. Moore’s previous time [4.8 years]” into FRS and 1'996 correspondence between the Monroe Fire Chief and FRS indicating the City's willingness to include Moore into the merger. Also entered into evidence were 1997,- 1998 and 1999 correspondence between FRS and its actuary detailing the cost of Moore’s service credit at that time. Other documents included a 1999 memo by a Monroe Assistant City Attorney concluding that it was Moore’s responsibility to pay the actuarial cost of the service credit with no statutory obligation existing for the City to do so with public funds, 2000 correspondence from Moore to the Monroe Mayor and a private attorney to an assistant City Attorney regarding the liability of the City to pay for the transfer of the service credit, 2001 correspondence between Moore’s present counsel and FRS, 2002 correspondence from Moore’s present counsel to the Mayor of Monroe, and a 2007 actuarial calculation for the 4.8 years sent to the City Attorney's office in 2008.

. Evidence shows that Moore first requested transfer of service calculations in May of 1997. He again requested a recalculation of that amount in May of 1999.

. Moore contends that it was his belief that the City had agreed to pay this amount on his behalf.

. FRS filed a cross-claim against the Mayor and City and unsuccessfully urged peremptory and declinatory exceptions of no cause of action and improper venue, which the court denied on May 27, 2003. Additionally, on August 16, 2006, the suit was dismissed as having been abandoned. Moore successfully had the judgment reversed on April 7, 2007, based upon executive orders relating to Hurricane Katrina, which suspended all deadlines and legal proceedings from August 29 through November 25, 2005.

. Both at oral argument and in his deposition, Moore claims no entitlement to reimbursement of the funds he contributed into MFPRF.

. FRS has not participated in the appeal of the judgment.