Ii SULLIVAN, Judge.
Reliable Amusement Company appeals from a preliminary injunction ordering it to remove its video poker machines from the premises of Big John’s Burgers, Inc. in Ferriday, Louisiana. The injunction was obtained by Four Rivers Gaming, Inc., who sought to enforce its contractual right to receive video gaming revenue from the machines at Big John’s upon the expiration of Reliable’s contract with the same establishment. For the following reasons, we affirm and remand for further proceedings.
| ¡.Facts and Procedural History
On July 20, 1994, Jerry Johns d/b/a Big John’s Hamburgers (later incorporated as Big John’s Burgers, Inc.) executed a contract granting Four Rivers the exclusive right to place video poker machines at his place of business for a term of five years. On July 7, 1995, Mr. Johns entered into a similar contract with Reliable. (Four Rivers had not installed any machines at Big John’s before this date because Mr. Johns had not obtained the required alcoholic beverage permit.) The agreement with Reliable had an initial term of three years, subject to automatic renewal, unless Mr. Johns sent written notice of termination via certified mail at least ninety days before the end of any term. Pursuant to this *940 contract, Reliable installed its machines at Big John’s on October 3,1995.
On August 1, 1996, Four Rivers sued Mr. Johns for breach of contract and later added Reliable as a defendant, alleging tortious interference with contractual relations. The trial court dismissed Reliable on an exception of no cause of action, and Four Rivers and Mr. Johns settled their differences by entering into a stipulated judgment on September 10, 1998. The stipulated judgment created a new contract in which Four Rivers agreed to renounce any claims under its July 20, 1994 contract in exchange for the right to receive video gaming revenue and to place its machines at Big John’s as of October 4, 1997 (the day after Reliable’s contract expired).
In the meantime, Mr. Johns, through his attorney, had notified Reliable by certified mail on March 26, 1998 that he did not intend to renew their agreement. Reliable, however, refused to remove its machines from the premises, contending that its contract had been automatically renewed because Mr. Johns had verbally “rescinded, revoked, withdrew and annulled” his termination letter.
la On September 29, 1998, Four Rivers filed a petition for injunctive relief and damages against Reliable, seeking the transfer of Reliable’s video poker machines and the revenue generated therefrom. After an evidentiary hearing, the trial court found that Reliable’s contract had expired, as Mr. Johns had complied with all requirements for termination. Accordingly, the trial court granted a preliminary injunction ordering Reliable to remove its machines from Mr. Johns’ premises, subject to Four Rivers posting security of $25,000. Reliable has filed a devolutive appeal, assigning six errors.
Opinion
In its first assignment of error, Reliable contends that the trial court erred in issuing an injunction in the absence of a contractual or legal duty owed to Four Rivers. We disagree, finding that Reliable did have a legal duty to remove its machines upon the expiration of its contract.
We find merit in Four Rivers’ argument that its position is analogous to that of a lessee. The stipulated judgment grants Four Rivers the exclusive right to place its video poker gaming machines on Big John’s premises. This provision, in effect, affords Four Rivers the right of enjoyment of a portion of Big John’s premises to the exclusion of other gaming suppliers. We also note that Reliable’s contract requires Big John’s to lease to Reliable “all the necessary square footage of floor space necessary to accommodate the exclusive installation” of the video poker machines.
Clearly, Four Rivers and Reliable could seek injunctive relief against Mr. Johns and Big John’s to enforce their rights under their respective contracts. See Louisiana Gaming Corp. v. Jerry’s Package Store, Inc., 629 So.2d 479 (La. App. 3 Cir.1993), appeal after remand, 94-1189 (La.App. 3 Cir. 3/1/95); 651 So.2d 481, in which we|4held that a video gaming company was entitled to a preliminary injunction prohibiting a store owner from allowing a rival gaming company to place its machines in the store. In granting the injunction in the present case, the trial judge stated that Louisiana Gaming essentially involved the same issue. We agree. We further find no prohibition against one party seeking to prevent a third party from interfering with the exclusive rights granted by a contract. For example, in Valley Electric Membership Corp. v. Southwestern Electric Power Co., 550 So.2d 702 (La.App. 2 Cir.), writs denied, 551 So.2d 1341, 1342 (La.1989), a utility company obtained an injunction prohibiting a competing utility company from interfering with its service to certain customers within its franchise granted by the local police jury. (The second utility company was acting pursuant to an overlapping franchise granted by an incorporated village.) In the present case, Four Rivers seeks to prevent its competitor *941 from interfering with its exclusive right to the video gaming revenue generated at Big John’s. Just as in Valley Electric, the outcome here requires a determination of which of the two contracts is valid.
Reliable argues in its next two assignments that the trial court erred in granting a mandatory preliminary injunction after only on a prima facie showing and without proof of irreparable injury.
“Mandatory injunctions are those which ‘order the doing of something.’” Denta-Max v. Maxicare Louisiana, Inc., 95-2128, p. 2 (La.App. 4 Cir. 3/14/96); 671 So.2d 995, 996, quoting Bollinger Mach. Shop & Shipyard, Inc. v. U.S. Marine, Inc., 595 So.2d 756, 758 (La.App. 4 Cir.), unit denied, 600 So.2d 643 (La.1992). The court in Denta-Max further explained:
Is Generally, ... a preliminary injunction which simply preserves the status quo until a full trial on the merits may be issued on a prima facie showing by the party seeking the injunction. However, the jurisprudence has established that a mandatory preliminary injunction ... has the same basic effect as permanent injunction, and therefore may not be issued on merely a prima facie showing that the party seeking the injunction can prove the necessary elements. Instead, the party seeking a mandatory preliminary injunction must show by a preponderance of the evidence at an evi-dentiary hearing that he is entitled to the preliminary injunction.
Id. at p. 3; 671 So.2d at 997 (citations omitted).
We find that the injunction in the present case, ordering Reliable to remove its video poker machines, is a mandatory injunction that does more than preserve the status quo. In issuing the injunction, the trial judge indicated that she applied only the prima facie burden of proof. We agree with Reliable that this was in error. Nonetheless, we find that the procedural requirements and burden of proof for a mandatory injunction were met in this case. The trial court issued the injunction after an evidentiary hearing “at which all parties were present, represented by counsel and were afforded the opportunity to present evidence and cross examine witnesses.” Dore v. Jefferson Guar. Bank, 543 So.2d 560, 562 (La.App. 4 Cir.1989). Additionally, for the reasons discussed below, we find that the evidence preponderates that Reliable’s contract was not renewed.
Concerning the issue of irreparable harm, the court in Bonomolo v. HMC Management Corp., 477 So.2d 780, 782 (La.App. 4 Cir.1985) (emphasis added) recognized that where “the clear and unequivocal terms of a lease are being violated, a party cannot continue the violation just because the resulting damage can be measured in money.” In Bonomolo, the plaintiffs lease included the exclusive right to operate a transportation service within the Louisiana Superdome, but the | fiSuperdome management company at times permitted its temporary tenants to provide other transportation services to their patrons. The appellate court upheld the issuance of a preliminary injunction, notwithstanding that the plaintiffs damages could be measured in money.
Reliable’s remaining assignments concern the trial court’s finding that its contract had not been renewed. Reliable argues that the trial court erred in excluding parol evidence showing that the parties agreed to disregard the termination notice, in requiring Reliable to prove a subsequent oral modification by clear and convincing evidence, and in allowing Mr. Johns’ attorney to selectively invoke the attorney-client privilege. Although we find merit in the first two arguments, we nonetheless find the evidence sufficient to support the issuance of the injunction.
At the evidentiary hearing, the trial court excluded any testimony about statements that Mr. Johns made concerning the termination notice. Reliable then proffered the deposition of its president, *942 Craig Tullos, and other Reliable employees, who testified that Mr. Johns told them to disregard the termination letter because he was “sticking” or “staying” with Reliable. Mr. Tullos testified that, based on these representations, he hired an additional permanent employee and he continued to advance loans to Mr. Johns. Neither Reliable nor Four Rivers called Mr. Johns to testify.
La.Civ.Code art. 1848 (emphasis added) provides:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
_Ji“The party asserting modification of an obligation must prove by a preponderance of the evidence facts or acts giving rise to the modification.” Big “D” Dirt Serv., Inc. v. Westwood, Inc., 94-1234, p. 8 (La.App. 3 Cir. 3/1/95); 653 So.2d 604, 608.
Based on the above, we find that the trial court erred in excluding the proffered testimony and in requiring Reliable to prove the subsequent modification by clear and convincing evidence. However, after reviewing the proffered evidence, we find Reliable has not proved the modification by a preponderance of the evidence. Reliable did not call Mr. Johns to testify. Thus, the only evidence from Mr. Johns is his termination letter, which shows that he followed the procedure set forth in the contract. In Big “D” Dirt Services, a contractor failed to send its subcontractor a required notice to correct defective work within seven days, but the parties’ subsequent discussions and actions indicated that they waived the notice requirement. In the instant case, Mr. Johns did comply with the contract’s notice requirement, and the only evidence suggesting an agreement to disregard it is the testimony of Reliable’s employees.
At the evidentiary hearing, Mr. Johns’ previous attorney, Norman Magee, testified that Mr. Johns hired him to review the Reliable contract and to do what was necessary to terminate the contract. Mr. Magee testified that, after reviewing the contract, he sent the letter of March 26, 1998 informing Mr. Tullos that Reliable’s contract would not be renewed and would terminate at the end of its current term. On cross-examination, Mr. Magee refused to answer any questions concerning any statements that Mr. Johns made to him about the termination notice, citing the Isattorney-client privilege. Agreeing with Mr. Magee, the trial court sustained all objections to this line of questioning.
On appeal, Reliable contends that Mr. Magee selectively invoked the attorney-client privilege by first testifying that he sent the termination letter at Mr. Johns’ request but then refusing to testify about statements Mr. Johns may have made concerning the letter. We disagree. Disclosure of only part of a privileged communication is deemed a waiver of the privilege on information concerning the same subject matter. Robinson v. Abraham, 582 So.2d 1341 (La.App. 4 Cir.1991). However, in the present case we find no disclosure of a privileged communication. The letter was addressed and mailed to Reliable’s president. In it, Mr. Magee stated that he was acting as Mr. Johns' representative. Mr. Magee’s testimony at trial that he sent the letter at Mr. Johns’ request only repeats what is evident from the letter, which was not privileged. We find no error.
Decree
For the above reasons, the judgment of the trial court is affirmed, and the case is remanded for further proceedings consistent with this opinion. Costs of this ap *943 peal are assessed to Reliable Amusement Company.
AFFIRMED AND REMANDED.