DREW, J.
| tin this dispute over retirement benefits, Walton Dill appealed the judgment sustaining defense exceptions of prescription and dismissing his suit with prejudice for failure to timely file the lawsuit under La. C.C. art. 3494. We affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On March 13, 2008, Walton Dill sought damages and a declaratory judgment against the following defendants:
• 32nd Terrebonne Parish Judicial District Court (JDC) and its Judicial Clerk’s Fund;
• Terrebonne Parish Consolidated Government (TPCG), formerly the Terre-bonne Parish Police Jury (TPPJ);
• 32nd Terrebonne Parish Judicial District Court IV-D Fund Agency;
• Parochial Employees’ Retirement System (PERS); and
• Terrebonne Parish District Attorney (DA).
Dill alleged that his employment (as judicial administrator) began on April 12, 1982, and ended in March 2007, when he was terminated by the elimination of his position. His last work day was March 17, 2006, when he went on extended sick leave. According to Dill, the various defendants paid varying amounts of his salary over the years. When terminated, his salary came from the 32nd JDC, the Judicial Clerk’s Fund, TPCG general fund, the IVD Fund, and the DA’s general fund.
According to Dill’s petition, the TPCG attempted to eliminate his position in 1984. The judges advised the TPCG that it could not eliminate the position, since Dill was not hired by the parish. From January 1, 1985, through January 1989, the Judicial Clerk’s Fund paid Dill’s entire salary. | aThen the DA assumed partial responsibility for Dill’s salary ($16,200 annually, paid by the quarter) and reimbursed the TPCG that amount. At that time, Dill’s total salary was paid by the TPCG with the DA reimbursing the parish the foregoing amount.
Dill alleged that in December 1999, an administrator for the PERS notified the TPCG that Dill was entitled to enroll in the retirement system and that enrollment was mandatory. TPCG failed to act and was again notified in August 2002 that Dill’s enrollment in the retirement system was mandatory. Dill was enrolled and began making employee contributions while the employer contributions were made from the Judicial Clerk’s Fund. Ac *1058 cording to Dill, he met the statutory definition of an employee under La. R.S. 11:1902(12)(a).
Dill sought retirement credit for his service prior to his enrollment, since his not being enrolled in the retirement system was through no fault on his part. He demanded that the various defendants be held liable for their proportionate employer contributions to the retirement system beginning in 1982. He also wanted the interest which would have accrued to be assessed against the defendants. In addition to the delinquent contributions and interest, Dill asked for compensatory damages for mental anguish and emotional distress caused by the financial stress inflicted upon him.
In its Reasons for Judgment, the trial court stated that when Dill was hired as a judicial administrator in 1982 by the General Fund of the Police Jury and the Criminal Court Fund, his employment permitted him to be enrolled in the PERS to which he and the employer made contributions. | ¾When he began working for the Judicial Clerk’s Fund, he was removed from PERS. A request for a refund of the contributions was made and a refund of Dill’s personal retirement contributions was given in 1985. In 2002, Dill inquired about enrolling himself and other employees in a retirement system and inquired about purchasing past credit. In 2004, Dill considered filing suit, but did not file until March 13, 2008. The foregoing facts were demonstrated by exhibits placed into evidence at the hearing on prescription. In particular, the trial court cited a petition forwarded to the TPCG on February 7, 2005, by Dill’s attorney, who informed the TPCG that he had been instructed to file the suit.
After the March 13, 2008, filing, the 32nd JDC Judicial Clerk’s Fund and the 32nd JDC IV-D Program Fund filed dilatory exceptions of lack of procedural capacity which were sustained in reasons assigned August 26, 2008. The judgment signed January 23, 2009, dismissed Dill’s action with prejudice against both the Judicial Clerk’s Fund and the IV-D fund.[1] The TPCG, the Terrebonne Parish DA, the 32nd JDC Judicial Clerk’s Fund, and the 32nd JDC IV-D Program Fund filed exceptions of prescription.
The trial court specifically found that contributions to retirement plans are a form of deferred compensation and subject to the three-year prescriptive period. Noting that Dill had hired an attorney in 2004 but did not sue until 2008, the trial court held the claim had prescribed under the |4three-year prescriptive period. In addition, the trial court rejected Dill’s argument that the claim did not vest until the date of his retirement.
DISCUSSION
Dill correctly noted that the criterion of appellate review for the factual finding (commencement of prescription) is the manifest error/clear wrong standard and that prescription statutes are to be strictly construed.
La. C.C. art. 3494 states:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees *1059 and emoluments of public officials, freight, passage, money, lodging, and board;
(2) An action for arrearages of rent and annuities;
(3) An action on money lent;
(4) An action on an open account; and
(5) An action to recover underpayments or overpayments of royalties from the production of minerals, provided that nothing herein applies to any payments, rent, or royalties derived from state-owned properties.
La. C.C. art. 3495 states:
This prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services.
In Fishbein v. State of La. ex rel. LSUHSC, 2004-2482 (La.4/12/05), 898 So.2d 1260, the plaintiff sought to recover retirement benefits calculated on both her base salary and supplemental pay. Over the course of her employment, retirement contributions by plaintiff and the employer were based upon the base salary only. No withholding was taken from plaintiffs supplemental pay, which in some years equaled more than 50% of her gross pay. The court stated that Fishbein’s suit was for recovery of | ¡¡compensation for services rendered. Therefore, the three-year prescriptive period in La. C.C. art. 3494 applied. When Fishbein filed her suit on August 7, 2000, any claims for compensation for services rendered prior to August 7,1997, had prescribed.
The retirement system sent Fishbein annual statements showing that retirement contributions were being made only on her base salary. In 1989, Fishbein knew that only her base salary was being used as the basis for retirement contributions. When she questioned her employer, she was informed, “This is how we do it.” When Fishbein entered DROP on July 1, 1998, her average compensation and creditable service were fixed and did not include her supplemental pay in fixing her benefits. On May 8, 2000, Fishbein’s attorney sent a letter to LSU and the retirement system requesting that her retirement benefit be adjusted to reflect her total compensation including her supplemental pay.
The supreme court found that Fishbein’s basic action was the allegation that LSU failed to properly certify her total earnable compensation and failed to cause the correct monthly remittance for the employer’s share of the retirement contribution. Her suit was not a claim for retirement benefits, because her primary complaint was essentially one for improper reporting of her total income.
Because retirement contributions are an increasingly important part of employees’ compensation, courts have found in a variety of factual situations that retirement benefits are deferred compensation for services. Fishbein, supra.[2] Therefore, Fishbein’s claim was for compensation for services to which the prescriptive period in La. C.C. art. 3494 is applicable.
The supreme court in Fishbein relied upon Grabert v. Iberia Parish School Board, 93-2715 (La.7/5/94), 638 So.2d 645, in which employees with a four-year employment contract sued for breach of contract and past due wages. The plaintiffs claimed they were paid less that the amount due under their contract. In Gra-bert, the supreme court rejected plaintiffs’ claim that the 10-year prescriptive period *1060 in La. C.C. art. 3499 for breach of contract applied, since La. C.C.P. art. 422 directed that the 10-year prescriptive period applied “unless otherwise provided by the legislature.” La. C.C. art. 3494 “otherwise provided” that the suit for underpaid wages (i.e., compensation for services rendered) prescribed in three years.
La. C.C. art. 3495 provides that prescription begins to run the day payment is exigible. The supreme court held that Fishbein’s claim for recovery of compensation was based on LSU’s having submitted incorrect information to the retirement system on her earnable compensation and remitted the incorrect amount of retirement contributions. Therefore, Fishbein could have acted on her claim the first month LSU paid her a supplemental salary which was not used to calculate her earnable compensation. Fishbein, supra.
The supreme court reached a different result based upon the specific facts in Ledoux v. City of Baton Rouge/Parish of East Baton Rouge, 99-2061 (La.2/29/00), 755 So.2d 877. After he retired in 1995, Ledoux, a city employee, sued for 2,128 hours of accumulated compensatory leave for hours worked in excess of 40 hours per week from 1977 until 1985. In 1985, the city/parish capped the amount of leave at 360 hours and mandated no employee could receive compensatory time prior to resignation or retirement. In 1986, the maximum was reduced to 240 hours, and in 1988 the policy was amended to prevent employees from being paid for unused compensatory time. The lower court found Ledoux’s claim had prescribed under C.C. art. 3494, but the supreme court decided:
Applying article 3495 to the facts of this case, we conclude that Mr. Ledoux’s claim for payment for compensatory time which accrued prior to 1985 had not prescribed when he filed this suit in 1995. Prescription on this claim did not commence to run until payment for his accrued compensatory time became exi-gible or when Mr. Ledoux could act on his claim for payment thereof. It is undisputed that until August 1, 1985, an unwritten policy allowed exempt unclassified employees like plaintiff to accrue unlimited compensatory time that could be taken either during employment or upon resignation or retirement, or the employee could be paid for the time when he was terminated or retired. As of August 1, 1985, a new compensatory leave policy reduced the amount of plaintiffs compensatory hours that could be accrued from an alleged 2,128 hours to 360 hours and further provided that plaintiff could not take compensatory leave prior to resignation or retirement. Personnel Rule IV, Section 22 provided that “all compensatory time accrued shall be paid at time of termination.” Therefore, we find that when Mr. Le-doux’s accrued compensatory time was reduced in 1985, he could neither be paid for the accrued compensatory time nor could he use the accrued time under the personnel rules of the city/parish in effect in 1985 until he was terminated or he retired. The prescriptive period could not commence sooner than the time of resignation or retirement because he could not institute his demand sooner under the personnel policy. Hence, his right to claim payment for compensatory time was not exigible until he retired in 1995.
775 So.2d at 880.
|sLedoux’s claim had not prescribed because he could not have sought to recover his accrued compensatory leave until his retirement. On appeal, Dill contends that the Fishbein opinion is factually inapplicable to this dispute. However, the trial court correctly applied the principles *1061 discussed in Fishbein, supra. A reading of both Fishbein and Ledoux reveals that the claims were for compensation for services which are governed by the three-year prescriptive period of La. C.C. art. 3494. That prescription begins to run when a claim becomes exigible. La. C.C. art. 3495. In Fishbein, the plaintiff could have complained any month the incorrect income was used to calculate retirement contributions. Because of the employer’s specific personnel rules in Ledoux, that plaintiff could not have sought to be paid for his accrued compensatory leave until he actually retired. Therefore, his claim had not prescribed.
In this case, Dill clearly knew that retirement contributions were not being made. His objections could have been made any month his employer failed to remit the employer’s and his own portion of the retirement contribution.
Documentation of Dill’s dissatisfaction with the handling or mishandling of his retirement benefits is replete in the record, including: Dill’s letter of July 31, 2002, requesting to be enrolled in the retirement system; the August 26, 2002, request to purchase back service from 1982 until 2002; the November 25, 2002, letter and invoice to Dill in response to his request to purchase prior service credit; the March 10, 2004, correspondence from Dill’s counsel stating she had been retained to resolve |flthe retirement dispute; and a February 7, 2005, letter and draft petition from Dill’s counsel to the TPCG stating he had been instructed to file suit. Suit was filed March 13, 2008, more than three years after the attorney’s notice that he had been instructed to sue on behalf of Dill. The trial court correctly found that Dill’s claim had prescribed.
Dill maintained that the 10-year prescriptive period should apply to some defendants because the TPCG and the DA were not his employers. The nature of the claim itself and Dill’s own pleadings belie his assertion. Dill is seeking to recover retirement benefits, a form of deferred compensation. Dill cites no authority to buttress his argument that the TPCG and the DA were non-employer contributors to his compensation.
In what apparently was not an uncommon practice for government employment at the local or parish level, various entities and funds contributed different amounts at different times to Dill’s salary as judicial administrator. Dill’s reliance is misplaced relative to the district judges’ informing the parish in 1984 that it could not terminate the position of judicial administrator because the parish had not hired him. While an instructive example of a bureaucratic maneuver, the incident does not address the legal status of Dill’s employment or lack thereof.
Finally, Dill seeks to equate his complaints about retirement benefits to federal employment discrimination law, under which Dill states that a discrete discriminatory act occurs each time a person is paid pursuant to a discriminatory practice. However, it is not necessary to address this, as this court agrees with the trial court that, based upon Louisiana’s laws and ^jurisprudence and the evidence in this record, Dill’s claim had prescribed when this suit was filed.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed and the action, having prescribed, is dismissed with prejudice. Plaintiff, Walton Dill, is cast with costs of the proceedings.
AFFIRMED.

. The Attorney General notes that the judgment was signed on January 23, 2009, and Notice of Judgment was sent February 2, 2009. According to the Attorney General, this judgment is final because Dill did not appeal. Therefore, the Judicial Clerk’s Fund and the IV-D Fund Agency are no longer parties to the action.

. Fishbein, supra, at p. 1265, p. 7, citing: Andrepont v. Lake Charles Harbor & Terminal Dist., 602 So.2d 704, 708 (La.1992), and T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834, 851 (La.1975).