GARRETT, J.
Bin this suit for unpaid wages filed pursuant to La. R.S. 23:631 et seq., the defendant, Physicians Behavioral Hospital (“PBH”), appeals from a trial court judgment awarding unpaid wages, penalties, and attorney fees to the plaintiff, Sharon Monroe, and denying defense motions for summary judgment and for judgment on the pleadings. It also asserts in this court an exception of prescription. Monroe answered, seeking additional attorney fees on appeal. For the following reasons, we sustain the defendant’s exception of prescription, reverse the trial court judgment in favor of the plaintiff, and reject the plaintiffs request for additional attorney fees on appeal. The arguments regarding the motions for summary judgment and for judgment on the pleadings are moot.
FACTS
In 2009, Monroe was hired to be a program manager for PBH. The position was *789 aimed at establishing intensive outpatient programs (“IOPs”) for the defendant. PBH appears to be engaged in delivering healthcare services to the community, although the exact nature of the services is not clear from the record. Monroe signed employment agreements with PBH in 2009, 2011, and 2012. She was terminated on December 3, 2012. On December 21, 2012, a demand letter was sent to PBH claiming that $173,532 was owed to Monroe. As will be more fully explained below, the demand letter was premised upon inaccurate information supplied by Monroe and set in motion the confusing chain of events which unfolded in this matter.[1]
li>On March 6, 2013, Monroe filed a petition against PBH claiming she was not paid wages owed to her under the 2009 and 2012 employment contracts with PBH. This petition, which was never amended, tracked the claims made in the demand letter, together with demands for penalties and attorney fees under La. R.S. 23:631 et seq. Monroe alleged that the 2009 agreement had a two-year term and specified that she was to receive a salary of $18,000 per month.[2] Monroe asserted that on February 2, 2011, while the 2009 agreement was still in effect, PBH unilaterally lowered her salary to $15,000 per month, effective January 31, 2011. Monroe claimed that she did not receive $21,532, to which she was entitled under the 2009 contract. Monroe did not attach a copy of this agreement to her petition.
Monroe alleged that on July 30, 2011, she entered into a new employment contract -with PBH, effective August 1, 2011. This contract set her monthly salary at $10,000 per month. She lodged no complaints arising under this contract. Monroe entered into a third employment contract with PBH, effective August 1, 2012, with a monthly salary of $8,000. She asserted that the 2012 agreement provided that she could not be terminated without cause for two years.
Monroe claimed that, on December 3, 2012, four months into the 2012 agreement, she was terminated without cause, in violation of the agreement. She urged that PBH owed her $152,000, the amount of wages she claimed were due for the remainder of the contract. Monroe asserted entitlement to a total amount of $173,532 in wages, $33,230.77 in penalties, Land reasonable attorney fees and costs. The allegations in the petition were verified by Monroe, who requested that' the matter be heard as a summary proceeding under La. R.S. 23:631(B).
On June 17, 2013, PBH filed a motion for judgment on the pleadings, claiming that Monroe was seeking to recover for alleged wrongful termination under the terms of the 2012 agreement when the termination was proper in accordance with that agreement and on the face of the pleadings. PBH also filed a motion for summary judgment asserting that Monroe’s petition claimed, under the 2009 agreement, she was to be paid a salary of $18,000 per month, but PBH unilaterally lowered the amount to $15,000 per month. However, PBH noted that the contract actually specified that Monroe’s monthly salary was $15,000, not $18,000. Because Monroe was paid in accordance with the agreement, PBH urged it was entitled to summary judgment dismissing Monroe’s claims. In support of the motion for summary judgment, PBH attached the 2009 *790 contract, which clearly reflected that the monthly salary was $15,000 and not the $18,000 claimed by Monroe in her suit. PBH also attached a portion of Monroe’s deposition where she testified that PBH complied with the 2009 and 2011 agreements. The trial court did not address or rule on either motion prior to hearing the case on the merits.[3]
The matter was tried as a summary proceeding on June 19-20, 2013. Monroe acknowledged in her testimony that, under the 2009 employment l4agreement with PBH, the monthly salary was $15,000, and not $18,000, as claimed in her demand letter and petition. The term of the contract was two years. Monroe also acknowledged that her wages varied during the 2009 agreement. She testified that she was asked to reduce expenses in her department and on more than one occasion she offered to cut her own salary for approximately 60 days to prevent the IOP from being shut down. According to Monroe, although she did not agree with the changes in her salary, she felt she had no choice but to accept a lower rate of pay. She acknowledged that sometimes she was paid more than the amount specified in the agreement. Monroe claimed at the trial that, under the 2009 agreement, she was owed a total of $860,000, but only received $334,911.93. Therefore, she claimed entitlement to approximately $25,000 in unpaid wages under the 2009 agreement. This new figure differed from the amount claimed in the original demand letter and petition and was based upon a completely different theory of recovery.
Monroe testified that in 2011 she entered into an agreement with PBH for a salary of $10,000 per month. The effective date of that agreement was August 1, 2011. A new contract in 2012 set her monthly salary at $8,000. She alleged that the terms of the 2012 agreement prohibited PBH from firing her without cause for two years from the effective date of that agreement, August 1, 2012. On December 3, 2012, Monroe was terminated and PBH notified her that it would pay her for 30 additional days as required by their agreement. Monroe accepted this payment.
IsMonroe admitted there were problems with opening the IOP and she did not recall the date of her first day of employment with PBH. She testified that she did not expect to be paid before she began work. It was eventually established that Monroe actually began working for PBH on September 21, 2009, and her pay under the 2009 agreement commenced on that date. She did not dispute that, if the policies and procedures of the company specified that deductions would be made from her salary for time taken off in excess of the amount she was entitled to, she would have no basis to argue with the deductions. The record shows that there were times when Monroe took off work when she did not have accrued leave time and, on those occasions, she was not paid. No complaints were ever lodged with PBH concerning the calculations in the paychecks or the computations concerning leave time.
PBH also brought out that Monroe owned a business called Monroe Medical Management that set up IOPs and had a contract with a hospital in Stonewall. She had opened a program in Lafayette that was found to be illegal and was shut down. These operations took place even though Monroe’s agreement with PBH contained a noncompetition clause. She attempted to distinguish between activities performed *791 by her company and those she performed personally. Monroe was involved in possibly opening another IOP with Allegiance Health. She claimed that Allegiance Health was not located in the areas covered by her noncompetition agreement. She admitted that she sent an email to Allegiance Health with the names of patients involved in the IOP at PBH, but claimed she did so in error.
| sMonroe acknowledged that her records had been seized by the FBI and the Office of the Inspector General regarding the operation of other IOPs. During the course of her work with PBH, Monroe’s mother and her brother, a convicted felon, were hired to assist with transportation, even though there was an anti-nepotism policy at PBH. According to Monroe, it was not uncommon to have convicted felons working for PBH.
William E. Logan, III, owner of PBH, testified that the company paid Monroe approximately $335,000 under the 2009 agreement, and this was the total amount she was owed. He stated that Monroe’s salary changed from time to time. At one point, when Monroe was asked by PBH to open another IOP at a different location, she was paid more. That IOP was never established. Because of budget issues, Monroe volunteered to take cuts in salary in lieu of others in her department being cut. He stated she never raised any objections about her salary while working at PBH. Logan testified that the company policy was to allow time off without pay if an employee had not accrued paid time off.
In addition to the testimony given by Monroe and Logan, various exhibits were introduced, including Monroe’s pay records. ' The records also contain time sheets, time-off requests, and a “PTO cash in request,” all signed by Monroe.[4] The paycheck stubs contained information pertaining to leave time hours. When the trial adjourned, the trial court ordered the parties to file briefs. Notably, the brief filed by Monroe contained yet 17another set of figures for what she claimed she was owed under the 2009 agreement.
On July 17, 2013, the parties appeared before the trial court to present oral arguments. PBH’s position was that Monroe was not entitled to any recovery and her theories for recovery continually changed. PBH also argued that claims for unpaid wages prescribe in three years and the fact that it had employment contracts with Monroe did not make the 10-year prescriptive period for contracts applicable. The parties disputed whether the 2009 employment contract could be modified orally.
The only issue concerning the 2012 contract, as framed by the parties, was whether Monroe could be terminated without cause. That contract specified that Monroe could not be terminated without cause within the first two years of employment. Monroe argued that she could not be fired without cause within two years of the effective date of the 2012 agreement. Monroe essentially argued that this was a contract for a fixed term, during which she could not be terminated without cause. She claimed that, by terminating her without cause, PBH breached the agreement, entitling her to the remainder of the salary she would have earned under the 2012 agreement. The trial court rejected Monroe’s argument on that point, finding that the agreement specified that Monroe could not be terminated without cause within the first two years of employment and her employment began in 2009. Therefore, in *792 December 2012, PBH was entitled to terminate Monroe without cause and did not owe the remainder of the salary that would have been paid under the contract. Thus, the trial court denied |sher any recovery for unpaid wages under the 2012 agreement and Monroe has not appealed this ruling.
As to the amounts allegedly due under the 2009 agreement, the trial court would not issue a ruling in open court, as it did not have a calculator in the courtroom. The trial court did not address the prescription issue and then took the matter under advisement.
Thereafter, on September 25, 2013, the trial court generated a judgment in favor of Monroe, granting her unpaid wages, penalties, and attorney fees. The trial court reasoned that under the 2009 agreement, from August 15, 2009, until August 15, 2011, PBH was obligated to pay Monroe $15,000 per month for. 24 months, minus wages of $336,585.08 paid during that period. Under the 2009 agreement, the trial court found that Monroe was entitled to unpaid wages in the amount of $23,464.92. Although Monroe was not awarded any unpaid wages under the 2012 agreement, the trial court found that she was entitled to $3,400 for unpaid vacation, even though it noted that “Counsel for Plaintiff put forth no specific amount of unpaid vacation.” The trial court awarded statutory penalties to Monroe in the amount of $62,307.90, and attorney fees of $17,660.50, plus costs. The trial court denied the exception of improper use of summary proceedings, motion for judgment on the pleadings, and motion for summary judgment.[5] PBH appealed suspensively.
| .PRESCRIPTION
As set forth below, we find that Monroe’s claims were completely invalid and that the trial court’s rulings were manifestly erroneous. Monroe did not prove that she was entitled to any recovery at all in this matter. However, we will address the exception of prescription filed by PBH in this court on March 25, 2014. PBH argued that Monroe filed suit for unpaid wages on March 6, 2013, and under La. C.C. art. 3494, such actions are subject to a three-year prescriptive period. According to PBH, any claims for unpaid wages allegedly owed before March 6, 2010, along with demands for penalties and attorney fees, had prescribed and should be dismissed. PBH contends that the existence of the employment contracts does not change the prescriptive period to the 10-year period for contracts. This court referred the exception of prescription to the merits. For the following reasons, we sustain the exception of prescription.
Legal Principles
An exception of prescription may be filed for the first time in the appellate court. La. C.C.P. art. 2163 provides in pertinent part:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
*793 Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception of prescription. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Holmes v. LSU/E. A. Conway Med. Ctr., 43,662 (La.App.2d Cir.10/22/08), 997 So.2d 605.
| ¶nThe general prescriptive period for a personal action, such as for breach of contract, is set forth in La. C.C. art. 3499:
Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.
In 1983, the legislature enacted exceptions to this general prescriptive period. La. C.C. arts. 3492-3498 establish shorter prescriptive periods for some personal actions. See La. Acts 1983, No. 173; Starns v. Emmons, 538 So.2d 275 (La.1989).
The prescriptive period applicable to a claim for unpaid wages is found in La. C.C. art. 3494, which provides in pertinent part:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions[.]
All of the actions covered by La. C.C. art. 3494 essentially arise from contractual relationships. The article does not present a choice between a contract remedy and some other remedy; it merely provides an exception to the general rule stated in La. C.C. art. 3499, that a personal action prescribes in 10 years. Starns v. Emmons, supra.
In considering a claim regarding the applicable prescriptive period for unpaid wages under an employment contract, the Louisiana Supreme Court in Grabert v. Iberia Parish Sch. Bd., 93-2715 (La.7/5/94), 638 So.2d 645, stated:
Plaintiffs, and the court of appeal, would have us believe that article 3494’s three year prescriptive period for past wages is not applicable here because their action for breach of contract is distinguishable from a claim for past due wages.
[nThe answer appears to be simple enough. A petition claiming breach of contract by the payment of wages less than what is due and seeking judgment for the underpaid wages is clearly a cause of action asserting the right to recover unpaid wages. Breach of contract is not a free standing cause of action. It is a legal premise, or principle, which gives rise to the right to claim some substantive remedy at law. Here that remedy is the recovery of past due wages.
The actions are plainly for salary or wages past due under the allegedly appropriate salary index. The three year prescription provided for in article 3494 is directly and explicitly applicable. The nature of the claim (for under paid wages) is not something different because it arises out of breach of contract. The contract breached made provisions for the very wages sought.
This petition to recover underpaid “compensation for services rendered” is admittedly a personal action as defined by Louisiana Civil Code of Procedure article 422.3. However, the ten year prescriptive period set forth in article 3499, is only applicable to personal actions “unless otherwise provided for by legislation.” La.Civ.Code art. 3499 (West 1994). The prescriptive period for ... suits for the recovery of underpaid wages is otherwise provided for in article 3494, for that article, as earlier indicated, provides a three year prescriptive period for personal actions seeking “compensation for services rendered.”
*794 The supreme court noted that virtually all claims for wages arise out of breach of contract, oral or written, to pay wages for services rendered. The Grabert court observed that the employer’s failure to pay the full and proper compensation for services provided gives rise to an action for breach of contract for which the remedy is recovery of wages. Because the remedy is the recovery of wages, the three-year prescription period of La. C.C. art. 3494 applies. See also Fishbein v. State ex rel. Louisiana State Univ. Health Sciences Ctr., 2004-2482 (La.4/12/05), 898 So.2d 1260; Chandler v. Kenyan, 38,084 (La.App.2d Cir.12/19/03), 862 So.2d 1182; Dill v. 32nd Judicial Dist. Court Judicial Clerk’s Fund, 44,949 (La.App.2d Cir.12/16/09), 12 27 So.3d 1056; Assaleh v. Sherwood Forest Country Club Inc., 2007-1939 (La.App. 1st Cir.5/2/08), 991 So.2d 67; Parry v. Administrators of Tulane Educ. Fund, 2002-0382 (La.App. 4th Cir.9/4/02), 828 So.2d 30, writ denied, 2002-2478 (La.12/19/02), 833 So.2d 346.
This prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services. La. C.C. art. 3495. In Ledoux v. City of Baton Rouge/Parish of E. Baton Rouge, 1999-2061 (La.2/29/00), 755 So.2d 877, the Louisiana Supreme Court considered the meaning of the word “exigible.” The court stated:
Black’s Law Dictionary defines an “exi-gible” debt as a liquidated and demanda-ble debt; a mature claim. Comment (b) to article 3495 states:
On principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible. See 2 M. Planiol, Traite elementaire de droit civil 3 Pt. 2, at 358 (Louisiana State Law Institute trans. 1959):
Liberative prescription begins to run as soon as the action accrues, or, as Pothier said “the day on which the creditor could institute his demand.” It cannot commence sooner, because the time given for prescription should be a time during which the action can be exercised, and one cannot reproach the creditor for not having acted at a time when he did not have the right to do so. Otherwise, it could happen that the right would be lost before it could be exercised, which would be as unjust as absurd (Cass. Civ., 11 Dec. 1918, D.1923.1.96, P. and S.1921.1.161).
The prescriptive period for claims for unpaid wages begins to run at the point that demand for payment can be made. In cases dealing with salaries and wages, the demand for payment can be made as soon as the 113wages are earned and payable. See Fishbein v. State ex rel. Louisiana State Univ. Health Sciences Ctr., supra; Dill v. 32nd Judicial Dist. Court Judicial Clerk’s Fund, supra; Webster v. Penn Treaty Network Am. Ins. Co., 12-90 (La.App. 5th Cir.7/31/12), 99 So.3d 708; Doan v. Technical Eng’g Consultants, Inc., 06-166 (La.App. 5th Cir.9/26/06), 942 So.2d 1145. This is true in spite of policy considerations that it is difficult for an employee to sue his employer during the employment for fear of retaliation. See Doan v. Technical Eng’g Consultants, Inc., supra.[6]
*795 Discussion
The jurisprudence is clear that an action to recover compensation for services rendered is subject to a three-year prescriptive period, even if an employment contract existed between the parties. Monroe’s claim is clearly one to recover compensation for services rendered and is subject to the three-year prescriptive period of La. C.C. art. 3494. Further, the prescriptive period begins to run on the day payment is exigible. Monroe argues that her claims only became exigible when her contracts ended. However, her claims are for unpaid wages. These claims were exigible at the time the wages were earned and payment was due. At that point, Monroe could have complained about any alleged underpayment of wages due her and could have asserted her claims. Prescription on those claims began to run at that time. Therefore, any possible claims for compensation arising prior to March 6, 2010, three years prior to the date she filed her | upetition, have prescribed. This prescription is evident on the face of the pleadings. Therefore, we sustain the exception of prescription asserted by PBH as to any alleged claims for unpaid wages prior to March 6, 2010.
PROOF OF ENTITLEMENT TO UNPAID WAGES, PENALTIES, AND ATTORNEY FEES
PBH also asserts that Monroe failed to carry her burden of proving any entitlement to unpaid wages. Further, because Monroe is not entitled to any unpaid wages, she should not have been awarded penalties and attorney fees. These arguments also have merit.
Legal Principles
Absent an abuse of discretion or manifest error, a reviewing court cannot disturb the factual findings of a trial court. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Coates v. Hill Wholesale Distrib. Co., 42,-584 (La.App.2d Cir.10/24/07), 968 So.2d 315, writ denied, 2008-0013 (La.3/24/08), 977 So.2d 953.
Agreements entered into have the effect of law upon the parties thereto. La. C.C. art. 1983; Grosjean v. Grosjean, 45,529 (La.App.2d Cir.10/13/10), 50 So.3d 233, writ denied, 2010-2623 (La.2/4/11), 57 So.3d 311, and writ denied, 2010-2619 (La.2/4/11), 56 So.3d 980. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that 11Bunder the circumstances is clearly indicative of consent. La. C.C. art. 1927; Grosjean v. Grosjean, supra.
An agreement may be modified or abrogated by the mutual consent of the parties. The law is clear that written contracts may be modified by oral contracts and the conduct of the parties. Grosjean v. Grosjean, supra.
La. C.C. art. 1848 provides:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement. [Emphasis supplied.]
When the underlying contract is not required to be in writing, it may be modified by a subsequent oral agreement, and parol evidence is admissible to prove the subsequent modification. Salley v. Louviere, 183 La. 92, 162 So. 811 (1935); *796 Smith v. Coffman, 46,793 (La.App.2d Cir.2/8/12), 87 So.3d 137; Shreveport Plaza Associates Ltd. P’ship v. L.R. Res. II, 557 So.2d 1067 (La.App. 2d Cir.1990); W.R. Aldrich & Co. v. Spalitta, 285 So.2d 835 (La.App. 1st Cir.1973); Teche Realty & Inv. Co., Inc. v. Morrow, 95-1473 (La.App. 3d Cir.4/17/96), 673 So.2d 1145. Even underlying contracts which contain provisions specifying that the contract may only be modified in writing may be subsequently modified by oral agreement. See Newman Marchive P’ship, Inc. v. City of Shreveport, 41,460 (La.App.2d Cir.11/1/06), 944 So.2d 703, writ denied, 2007-0060 (La.3/9/07), 949 So.2d 448, and writ denied, 2007-0097 (La.3/9/07), 949 So.2d 452; Rhodes Steel Bldgs., Inc. v. Walker Const. Co., 35,917 (La.App.2d Cir.4/3/02), 813 So.2d 1171; Shreveport Plaza Associates Ltd. P’ship v. L.R. Res. II, supra; Wisinger v. Casten, 550 So.2d 685 (La.App. 2d Cir.1989); Fleming v. JE Merit Constructors, Inc., 2007-0926 (La.App. 1st Cir.3/19/08), 985 So.2d 141; Capitol Nursing Home, Inc. v. Nixon, 1999-0378 (La.App. 1st Cir.3/31/00), 764 So.2d 1016, writ denied, 2000-1234 (La.6/16/00), 765 So.2d 336; Wahlder v. Tiger Stop, Inc., 391 So.2d 535 (La.App. 3d Cir.1980), writ denied, 396 So.2d 1351 (La.1981); Christ v. Christ, 251 So.2d 197 (La.App. 3d Cir.1971).
Modification of a written agreement can be presumed by silence, inaction, or implication. Fleming v. JE Merit Constructors, Inc., supra; Cajun Constructors, Inc. v. Fleming Const. Co., Inc., 2005-2003 (La.App. 1st Cir.11/15/06), 951 So.2d 208, writ denied, 2007-0420 (La.4/5/07), 954 So.2d 146.
The party who asserts that an obligation has been modified must prove by a preponderance of the evidence facts or acts giving rise to the modification. La. C.C. art. 1831; Four Rivers Gaming, Inc. v. Reliable Amusement Co., 98-1581 (La.App. 3d Cir.6/16/99), 737 So.2d 938, writ denied, 99-2027 (La.10/29/99), 748 So.2d 1166.
Discussion
The trial court found that, under the 2009 agreement, Monroe was entitled to 24 payments of $15,000 each for a total of $360,000. The trial court also found that she was paid $336,535.08, and was entitled to unpaid wages in the amount of $23,464.92. Under the 2012 agreement, the trial court determined that Monroe was entitled to payment for “unpaid vacation” in the amount of $3,400, but found no bad faith on the part of PBH in 117failure to pay this amount. The trial court then awarded Monroe penalties and attorney fees. The reasoning by the trial court and the judgment are completely unsupported by the testimony and the documentary evidence. The trial court judgment is a clear example of manifest error and must be reversed.
The 2009 agreement had an effective date of August 15, 2009. As stated above, all of Monroe’s claims for unpaid wages that may have arisen prior to March 6, 2010, have prescribed. Therefore, any claims for unpaid wages, if any, from August 15, 2009, through March 6, 2010, cannot be considered.
Monroe acknowledged that she did not begin working for PBH until September 21, 2009, and did not expect to be paid until she began working. Thus, the trial court’s simplistic analysis that $15,000 per month should be multiplied by 24, to cover the period from August 15, 2009, through August 15, 2011, to arrive at $360,000 is flawed from the inception because Monroe was not working during that entire time. Further, the trial court failed to take into account that the initial contract in 2009 was superseded by the second contract, *797 which began on August 1, 2011. Thus, the trial court’s inclusion of periods prior to September 21, 2009, and after July 31, 2011, was clearly wrong. The trial court’s calculations are completely erroneous and unsupported by Monroe’s own testimony, as well as by the documentary evidence.
Further, the payment records filed into evidence in this case show that from March 7, 2010, through November 7, 2010, Monroe was paid in 118accordance with her contract, with the exception of two days she took off in May when she had no accrued paid leave time.[7] Logan testified that the company policy was to allow time off without pay if an employee had no accrued paid leave time. Monroe testified that she had no basis to dispute the company pay records if they showed that she took off more time than she was entitled to. The payment records show that Monroe did not have leave time and, in accordance with company policy, she was not paid for the time she did not work.[8] The records also show that when she had paid time off available to her, she routinely filled out written requests for leave or to cash in and be paid for leave time. All of this indicates she was fully aware of and complied with the employer’s policies. The trial court gave no reason for rejecting credits to PBH for the time Monroe took off without accrued leave time. We find that the trial court erred in failing to consider in its calculations the time Monroe took off without pay.
All the agreements in this case were employment contracts which were reduced to writing. There is no statutory requirement that such contracts be written. Therefore, in accordance with the jurisprudence set forth above, because the underlying contract was not required to be in writing, it could be orally amended, even though it specified that 1 ^modifications must be in writing.[9] The evidence and testimony show that the 2009 agreement was orally amended and that the parties mutually agreed to the changes.
The oral amendments of the 2009 agreement were established by the testimony of both Logan and Monroe. The first amendment occurred on November 8, 2010, and resulted in an increase in Monroe’s salary. Logan testified that when PBH asked Monroe to work toward opening another IOP, her salary was increased. Payment records show that this increase in salary was in effect from November 8, *798 2010, through January 30, 2011. Monroe did not deny that, at some points, she was paid more than the salary set forth in the 2009 agreement. Thus, in these instances she clearly benefited from the modification of the original agreement.
The testimony of both Logan and Monroe also establishes an oral modification of the written agreement which lowered Monroe’s salary. Beginning January 31, 2011, Monroe’s pay was modified downward and she received wages of $6,435.69 every two weeks. Logan stated that Monroe offered to have her salary reduced in order to keep others in her department from being cut. Monroe acknowledged that she offered to reduce her salary in order to keep the IOP program at PBH from being shut down. Although she stated that she “did not agree” with having to reduce lather salary, her testimony was clear that she offered to do so. Although Monroe clearly was not pleased with a reduction in her salary, the testimony demonstrates that the parties mutually agreed to a reduction in Monroe’s salary. We also note that, at the time this occurred, Monroe did not ever complain to PBH that she was being underpaid or question the amounts of her paychecks.
The testimony and evidence establish that Monroe was paid in accordance with the terms of the 2009 agreement, as orally amended by the parties. When she took time off without having accrued paid leave time, in accordance with company policy, she was not paid for those days. According to our close review of the record, Monroe was paid all that she was due under the 2009 agreement.
The 2009 agreement was to be effective until August 15, 2011. However, the parties executed a new written agreement which was effective August 1, 2011. According to this agreement, Monroe’s salary was reduced to $10,000 per month. Monroe makes no claims for underpayment of wages in connection with the 2011 agreement.
The parties entered into a third written agreement, which was effective on August 1, 2012. That agreement set Monroe’s salary at $8,000 per month. She was paid her gross salary under this agreement until she was terminated on December 3, 2012.As set forth above, the trial court found, correctly, that under the terms of the agreement, Monroe could be terminated without cause and PBH did not breach the agreement and was |21not required to pay the remainder of what Monroe would have earned under the contract had she not been terminated.
However, the trial court inexplicably found that Monroe was entitled to payment for '“unpaid vacation” in the amount of $3,400 under the 2012 agreement. This finding is also clearly wrong and manifestly erroneous. Monroe never asserted in her pleadings or at trial that she was entitled to any payment for “unpaid vacation” time. A judgment rendered beyond the pleadings is a nullity. Havener v. Havener, 29,785 (La.App.2d Cir.8/20/97), 700 So.2d 533. Although the trial court has discretion to allow enlargement of the pleadings to conform to the evidence, that did not occur in this case. See La. C.C.P. art. 1154 and Havener v. Havener, supra.
La. Const. Art. 1, § 2, provides that no person shall be deprived of life, liberty, or property except by due process of law. The essentials of “due process of law” are notice and an opportunity to be heard and to defend in an orderly proceeding rules and principles established in our system adapted to the nature of the case. Havener v. Havener, supra.
La. C.C.P. art. 862 grants the trial court authority to render a final judgment *799 granting the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded relief in his pleadings. Nothing in the article is intended to confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it. Ha-vener v. Havener, supra. Because the trial court granted recovery not requested in the pleadings or argued at trial, that portion of the judgment is a nullity.
1 ^Further, the evidence in this case does not support the trial court’s finding. In its written judgment, the trial court found that, although Monroe was not entitled to any unpaid wages under the 2012 agreement:
[T]he arguments of Counsel persuades this Court to determine that Plaintiff was entitled to vacation. Upon her termination, Plaintiff was not compensated for unused vacation. Counsel for Defendant argued that the amount of unpaid vacation was definitely less than $5,000.00; Counsel for Plaintiff put forth no specific amount of unpaid vacation. After reviewing and considering Exhibit P-7, documents of “Time Off Request” dated 12/19/11, 03/20/12, 03/28-30/12, 10/10/12, 10/09/12, one undated, 11/05/12, and 11/19/12, this Court now determines that Plaintiff is entitled to the amount of $3,400.00 for unpaid vacation based upon a reasonable calculation most favorable to Defendant. This Court also finds that Defendant’s failure or refusal to pay Plaintiff for said amount of vacation in a timely manner was not in bad faith. [Emphasis in original.]
This statement is totally unsupported by the record. In fact, the transcript of the argument referred to by the trial court reveals that the court’s recollection of the argument was completely erroneous.
Monroe’s counsel never argued to the trial court that the plaintiff was entitled to payment for unpaid vacation under either the 2009 or the 2012 agreement. At the argument, the trial court engaged in a colloquy with PBH’s counsel regarding the amount of credit that might be due to PBH under the 2009 agreement for time Monroe took off without accrued leave time and for which she was not paid. Several of these instances occurred prior to March 6, 2010, and are prescribed. There was no discussion of the 2012 agreement. Counsel for PBH stated that the amounts not paid to Monroe because she did not have accrued leave time were less than $5,000. At the end of the argument, the trial court stated that, under the 2009 agreement, it found that Monroe was entitled to $360,000, less the amounts | ¡^actually paid to her. The trial court declined to subtract the amounts PBH withheld from Monroe’s pay when she was off work without accrued leave time. As discussed above, the trial court erred in failing to consider that, according to company policy, Monroe was not entitled to be paid for time she took off without accrued paid leave time.
Monroe’s counsel then argued regarding the amount of unpaid wages allegedly due under the 2012 agreement. Counsel for both parties agreed that the sole issue concerning that agreement was whether Monroe was entitled to recover the total amount of salary she would have earned under that agreement if she had not been terminated. Monroe’s counsel never argued that the plaintiff was entitled to payment for any “unpaid vacation” time under the 2012 agreement.
In making an award for “unpaid vacation” time, the trial court cited several requests for time off contained in exhibit P-7. This exhibit contained all of Monroe’s pay records from PBH. These records show that, beginning in January 2012, Monroe had accrued 80 hours of paid time *800 off. On March 20, 2012, she used four hours; during the period of March 28 through March 30, 2012, she used 20 hours; on October 4, 2012, she used eight hours; on October 12, 2012, she used eight hours; on October 24, 2012, she used eight hours; on October 25, 2012, she used eight hours. For the pay period covering October 22 through November 4, 2012, Monroe cashed in 20 hours and was paid $923.20 in addition to her regular salary. On November 16, 2012, Monroe used the last four hours of paid leave time she was entitled to. She was terminated on December 3, 2012. At that time, 124the records are undisputed that Monroe had no “unpaid vacation.” PBH clearly did not owe her for any unused leave time and Monroe never claimed this. The trial court decision, which simply created an award for “unpaid vacation,” is manifestly erroneous and clearly wrong.
The record in this case shows that Monroe was paid all she was entitled to receive under the 2009 agreement with PBH, as orally amended. The record also shows that she was not entitled to any payment for “unpaid vacation” under the 2012 agreement. Finding that the trial court judgment was manifestly erroneous and clearly wrong, we reverse the judgment in favor of Monroe, which granted her unpaid wages, payment for “unpaid vacation,” penalties, and attorney fees.[10]
CONCLUSION
For the reasons stated above, we sustain the exception of prescription in favor of the defendant, Physicians Behavioral Hospital, LLC. We reverse the trial court judgment in favor of the plaintiff, Sharon Monroe, against the defendant, Physicians Behavioral Hospital, LLC. We render judgment in favor of Physicians Behavioral Hospital, LLC, dismissing all claims of the plaintiff, Sharon Monroe, against it. Costs in this court are assessed to the plaintiff, Sharon Monroe.
EXCEPTION OF PRESCRIPTION SUSTAINED; JUDGMENT REVERSED AND RENDERED.

. The attorney who prepared the demand letter was not the attorney who later represented Monroe in this litigation.

. The effective date of the 2009 agreement was August 15, 2009. Monroe incorrectly stated in her petition that the effective date of the 2009 agreement was August 1, 2009.

. PBH also filed an exception of improper use of summary proceedings, which was not ruled upon by the trial court prior to the trial on the merits. PBH has not sought review of the trial court’s failure to rule on this exception before trial.

. As will be discussed below, the "PTO cash in request" resulted in Monroe being paid for 20 hours of accrued personal paid time off.

. Sharon Monroe is correctly named as the plaintiff in the caption and the introductory portions of the judgment. However, the decree grants judgment to Mary G. Huckabee against PBH. This appears to be a clerical error because Mary G. Huckabee does not appear in this suit at any point. Had this been an issue, the judgment might possibly have been amended under La. C.C.P. art. 1951. Because there has been no argument that the trial court intended to award judgment to anyone other than Monroe and due to our disposition of this appeal, no action is necessary.

. Cases dealing with unpaid wages are distinguishable from cases dealing with payment for unpaid leave and sick time, which cannot be demanded until an employee retires or is terminated. See Wyatt v. Avoyelles Parish Sch. Bd., 2001-3180 (La.12/4/02), 831 So.2d 906; Ledoux v. City of Baton Rouge/Parish of E. Baton Rouge, supra.

. The records also show that Monroe took time off from work prior to March 6, 2010, when she had no accrued paid leave time. Because those instances occurred prior to the prescription date, there is no need to discuss them in detail. However, they are relevant to show that she never voiced any complaints about her pay until she was terminated.

. The 2009 agreement incorporates the policies and procedures of PBH by stating that:
The Program Director acknowledges that as an employee of the Hospital, the Program Director shall abide by the Policies and Procedures Manual and personnel policies and procedures adopted from time to time by the Hospital.

. The plaintiff relies on Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary, 2005-2364 (La.10/15/06), 939 So.2d 1206, in support of its argument that, because the parties in this case specified in the 2009 agreement that all amendments to the agreement must be in writing, the agreement could not be orally amended. Joseph does not support that argument. The issue in Joseph was whether a stipulation pour autrui existed. The supreme court held that a stipulation pour autrui does not have to be in writing unless the underlying contract must be written. Because the parties in Joseph had a written contract that stated the document constituted the entire agreement between them, the stipulation pour autrui would have to be written as well. The court in Joseph never discussed the type of verbal change in the agreement itself that is at issue here.

. Because we reverse the judgment in favor of Monroe and render judgment in favor of PBH, it is not necessary to consider PBH’s arguments regarding its motion for summary judgment. Further, because penalties are not due in this case, we do not consider PBH's argument that penalties were not proper where there was a genuine dispute as to entitlement to unpaid wages. Because Monroe is not entitled to unpaid wages, she is not entitled to attorney fees, and, of course, she is not entitled to additional attorney fees on appeal.